**HODAPP, Gdn, Etc v OLAFF, Admr, Etc et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1273.  Decided May 19, 1934

Cooper & Lunsford, Dayton, and Dale Hodapp, Dayton, in proper person for Resident Guardian.

Otto G. Graeff, Cleveland, for the Administrator.

Jacobson & Durst, Dayton, for Kosta D. Milvanos.

John D. Dritsas, and Allaman, Funkhouser & Murr, Dayton, for Helen Milvanos.

Pickrel, Schaeffer, Harshman & Young, Dayton, for Loan Company.

SHERICK, J, (5th Dist) sitting by designation.

**OPINION**

By SHERICK, J.

Section XII of Article I of the Ohio Constitution, wherein it is written that, "no person shall be transported out of the state, for any offense committed within the same; and no conviction shall work corruption of blood, or forfeiture of estate," is the chief anchor of Tago's hopes.

A consideration of the case of **Deem v Millikin**, 6 O.C.C., 357, affirmed without report, 53 Oh St, 668, upon the reasoning of the Circuit Court, is important in that it places Ohio in accord with the major rule as stated in 9 R.C.L.,47, §40; "that in the absence of a statute providing that murderers shall not inherit the property of their victims, the court cannot except murderers from the operation of the statutes of descent."

Attainder at common law had its origin in feudalism. It resulted in corruption of blood and forfeiture of estates. It penalized innocent parties who could not inherit through one attainted. This conception of justice was repugnant to the American people, who expressed their dislike in no uncertain language as in §XII of Article I of the Ohio Constitution; and the Legislature pursuant to that mandate enacted our statutes of descent and distribution without exception thereto. It cannot be supposed, unless legislative stupidity is presumed, which is an unwarranted inference, that the peoples' representatives enacted these sections without thought of the consequence of a murderer inheriting. The theory of those au-thorities, which upon the ground of public policy, induced by the horror and repulsion of a felon inheriting by his wrong doing, is perhaps morally sound, but it is certainly judicial legislation, when it attempts, upon the ground of public policy, to engraft an exception upon a statute which clearly defines the public policy of the state.

The Legislature of this state has recently recognized the soundness of the court's holding in the Deem case, for it proceeded in the enactment of §10503-17 GC to declare an exception to the rule of descent and to enlarge the state's publc policy by providing, that:

"No person finally adjudged guilty, either as principal or accessory, of murder in the first or second degree shall be entitled to inherit or take any part of the real or personal estate of the person killed, whether under the provisions of this act relating to intestate succession, or as devisee or legatee, or otherwise under the will of such person; nor shall such person inherit or take any real or personal estate of any other person as to which such homicide terminated an intermediate estate, or hastened the time of enjoyment. With respect to inheritance from or participation under the will of the person killed, the person so finally adjudged guilty of murder in the first or second degree shall be considered as though he had preceeded in death the person killed * * *."

We should now consider the recent statute in the light of the theory upon which the Deem case rests. That is, if forfeiture of estate were countenanced it would be an infliction of an additional penalty upon the wrong-doer, not contemplated by the criminal statute, and supposedly contra to the quoted provision of the bill of rights. Numerous authorities holding to the general rule have intimated that such a statute might be repugnant to the constitutional provision. But, as pointed out in 6 A.L.R., 1409, note, no state which has directly considered this question, has so concluded. It is held in Hamblin v Marchant, 103 Kan., 508, 175 Pac., 678, 6 A.L.R., 1403, that the section is not penal, that it adds nothing to the penalty, and neither does it provide for a forfeiture. It is said that it is a statute of descent and distribution and entirely within the right of the legislature to limit such rights. The same conclusion is reached in Perry v Strawbridge, 209 Mo., 621, 108 SW 641, 16 L.R.A. (N.S.) 244; Box v Lanier, 112 Tenn., 409, 79 SW, 1045, 64 L.R.A., 458. These cases, however, are founded upon the

fact that the rights therein affected were not vested rights.

On the other hand, those courts which have considered a similar provision in relation to a vested right have denominated the statute in part to be penal in character, and have refused, in view of the constitutional provision, to declare a forfeiture in such cases.

If we were called upon to determine constitutionality of this act, our disposition would be to hold the act constitutional insofar as it relates to contingent interests; but we doubt its purpose when it would work a forfeiture of a right already vested in the murderer. It is our conclusion that the statute can have no application to the situation developed by this record.

In the first place, the section lays strict emphasis upon the conviction of murder in the first and second degree. In this case Tago was convicted of a degree of murder; whether it be second, third or fourth, under the Greek law, we do not know; we only find from the record that he was convicted as the "moral author of the crime." It is not shown by those adverse to Tago to have been murder in the first or second degree, as understood by the law of this state.

In the second place, if Tago's right to the fund was a vested interest prior to the death of Apostol, it would be our conclusion in this particular case that the statute inflicted an additional penalty upon Tago, other than prescribed by the Greek law, that is, a forfeiture of his property in this country.

It is well settled that penal statutes have no extra-territorial effect, and that they, as well as statutes in derogation of the common law, must be strictly construed. It is, therefore, our view that the section does not comprehend forfeiting the vested estate of a murderer unless that conviction be imposed within the confines of the state itself. A state might define murder in the first and second degree in an altogether different manner from what Ohio has prescribed. That state's third degree might correspond to our first or second. To determine otherwise might work a forfeiture in this state by an act which was murder in the second degree in another state, but which was only manslaughter in Ohio: Such was not the legislative purpose.

Harrison v Moncravie, 264 Fed., 776, appeal dismissed in 255 U. S., 562, considers whether one may be barred of her estate in Oklahoma for a killing in Kansas. It was held that the Kansas law could have no extra-territorial effect.

Our inquiry must be now further directed as to whether or not Tago had a vested interest in the joint and survivorship account countenanced by §9648 GC. It is not necessary to again repeat the authorization executed by Apostol and Tago and delivered to the Loan Company. They agreed and jointly authorized it to pay this account upon the order of either. The fact that Apostol kept possession of the passbook and intended Tago to have this property at his death is not all conclusive as to the nature of Tago's interest, for he did have a present right to withdraw this account. That right was based upon §9648 GC and Apostol's direction and the Loan Company's acquiescence. It was a vested right, subject of course to being divested if Apostol withdrew that right, which he did not do.

The case of **Cleveland Trust Co. v Scobie, 114 Oh St, 241,** 48 A.L.R., 182, 151 NE, 373, follows the general rule in that if the intention of the donor is to vest a present right in the donee to share in the deposit, such an act constitutes a gift that can be sustained. The court therein further cites authority and quotes with approval the language of those jurisdictions which hold that delivery of the passbook into the hands of the donee is not necessary to complete a gift; and that the power reserved in the donor of revocation does not prevent the transaction from being a completed gift; and that full enjoyment of the entire deposit is postponed until after the donor's death does not preclude it from being a gift inter vivos.

We recognize that Tago's act forestalled the withdrawal of his power to draw the account and accelerated and established his irrevocable right thereto. Had this unlimited power not been given to the Loan Company to pay this account to Tago before Apostol's death, then it might well be said that Tago's right thereto was purely contingent upon his survivorship. Tago had a present interest even if it was to be enjoyed in the future. He was in being and had a right to the immediate possession of the fund upon the termination of Apostol's interest, that is by Apostol's death.

It is evident that §9648 GC provides another or new method of succession to property. It is not governed by the law of descent and distribution. It is not a will. It, in fact, partakes of the nature of a gift. It was not made by the donor in contemplation of death. It therefore lacks that essential element necessary to establish a gift causa mortis.

In order that the courts might give expression to this legislative right to succession by joint and survivorship accounts,

it has become necessary to brush aside some of the elements that heretofore were considered indispensible in the creation of gifts inter vivos, and if such was not done this statute would have been stillborn. Tago's counsel boldly assert that the transaction is contractual. It is maintained that the words employed in the authorization import an agreement. There is no question but that the donor and donee do agree with the Loan Company, and we humbly submit that it is fair to presume from the import of the words used that Apostol and Tago agreed one with the other to exercise a present right of enjoyment to the deposit. It is at least a bit more than a gift inter vivos, as is indicated in the Scobie case, supra, wherein it is stated:

"After all, upon deposit of an account the bank is constituted a debtor, and when the depositor orders the bank to pay himself or another upon order of either party, notifies the second party of the completed transaction, and secures her signature evidenceing assent to the arrangement, and notifies her of the completed transaction, he has created in the second party by contract a joint interest in his right to the deposit equal to his own."

We therefore conclude that Tago took a present vested right to this account, subject to be divested, of course, under and by virtue of this statute which creates a hybrid means of succession previously unknown to Ohio Law. The query presents itself: Could Tago be heard to say in the event of the Loan Company's insolvency prior to Apostol's death, that he was not liable for stockholders' double liability, if building and loan companies should be held amenable to that law? We think not.

In searching the authorities that adhere to the minority rule hereinbefore discussed, we find the case of Riggs v Palmer, 115 N. Y., 506, 22 NE 188, 5 L.R.A., 340, supporting that view. It is of special interest for two reasons: first, it is decisive of the latter case from that state known as Re: Santourian, 125 Misc., 688, 212 N. Y. Supp., 116. In this case a husband and wife had a joint account. The husband murdered his wife. It was held that he would not be permitted to profit by his crime. We are unable to follow this authority or the reasoning therein. The Deem case, supra, strongly disproves of the Riggs case, and the Supreme Court approves of the reasoning in the Deem case.

Apostol's heirs make the claim that if Tago takes by virtue of contract, that his position is then analogous to that of an insured who burns his property in order to secure the insurance, or to a beneficiary who kills the insured in order that he may obtain the sum due under the policy. We do not think so.

Judge Shanck, in his discussion of the Riggs case in the Deem opinion says:

"There should be no difficulty in distinguishing this case in which rights are vested by statute, from those cases in which the rights asserted have no foundation other than the fraudulent or unlawful conduct of a contracting party, nor from those in which attempts are made to use the process of courts for fraudulent purposes."

The rights acquired under insurance policies are purely contractual. In the case before this court, Tago's rights are vested by §9648 GC, and the gift or contract made in reliance thereon.

It is not the pleasure of this court to have reached the conclusion arrived at. We regret that Tago may profit by his wrongful act, but we can not disregard the law as we find it, or resort to judicial legislation to accomplish an affirmance for moral reasons. Our answer must be, a resort to the rather hackneyed phrase, that the remedy lays in the hands of the people and not in the courts. The judgment is reversed and cause remanded with instructions in conformity to the views herein expressed.

HORNBECK, PJ, and BARNES, J, concur.