In the Matter of the Estate of YESTER SANTOURIAN (Also Known as ESTHER SANTOURIAN).

. Surrogate's Court, Rensselaer County, September 30, 1925.

Joint tenancy — deposit in savings bank by wife in joint names of herself and husband, payable to either or survivor — husband murdered wife — amount on deposit will be paid to administrator of wife notwithstanding Banking Law, § 249, subd. 3.

Money deposited by a wife in a savings bank in the joint names of herself and her husband, payable to either or the survivor, does not go to the husband on the death of the wife, as provided by subdivision 3 of section 249 of the Banking Law, where it appears that after the deposit was made the husband murdered the wife and was convicted and sentenced therefor. The amount so deposited will be paid to the administrator of the wife's estate.

PROCEEDING under section 205 of the Surrogate's Court Act to compel the delivery of a bank deposit to the administrator.

*Guy F. Swinnerton*, for the petitioner.

*Murphy, Aldrich & Guy* [*John H. Broderick* of counsel], for the Manufacturers Bank.

WAGER, S.:

In February, 1923, the deceased opened an account in the Manufacturers National Bank of the city of Troy in her individual name which continued until May 12, 1924, when the sum of $399.21, the total deposit, was withdrawn and a new account in the same bank was opened in the name of " Esther Santourian and Siraqoin Santourian, either to draw or the survivor." Certain additional deposits were made to this account and certain withdrawals were made, leaving a balance on July 1, 1925, to the joint credit of $306.27.

The deceased, Yester Santourian, was killed by Siraqoin Santourian, her husband, and on the 12th day of June, 1925, he pleaded guilty to the crime of murder in the second degree in the Rensselaer County Court and was sentenced to be confined

in Clinton Prison at Dannemora, N. Y., for a term of not less than twenty years nor more than the rest of his natural life. He is now confined in prison under said sentence.

The administrator in this proceeding has brought in not only the bank but also the husband. The bank alone has answered; and the only question to be determined is whether or not this fund shall be paid over to the petitioner or is to remain in the bank as the property of the surviving husband.

Under subdivision 3 of section 249 of the Banking Law it is provided that " When a deposit shall be made by any person in the names of such depositor and another person and in the form to be paid to either or the survivor of them, such deposit and any additions thereto made by either of such persons after the making thereof, shall become the property of such persons as joint tenants, and the same together with all dividends thereon shall be held for the exclusive use of such persons and may be paid to either during the lifetime of both or to the survivor after the death of one of them, * * * The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor."

Under the statute, therefore, the title to this deposit would vest in the husband of the deceased, Siraqoin Santourian, unless equity and justice require that a murderer should not profit by reason of his crime.

It has long been the settled law of this State that one who kills another for the purpose and with the intent of inheriting or succeeding to the property of one killed either under a will or the Statute of Descent, could not be permitted to profit by his crime and take the property of the deceased. (*Riggs* v. *Palmer*, 115 N. Y. 506.)

The Supreme Court has also held that the heirs of a murderer could not inherit property where the murderer first killed his wife and then committed suicide in the case of real estate held as tenants by the entirety. (*Van Alstyne* v. *Tuffy*, 103 Misc. 455.)

In the case under consideration the husband does not succeed to the title of this bank deposit in question under the will of his wife or under the Statute of Distribution, but under the Banking Law as above quoted he was an owner of the deposit and had title thereto prior to his wife's death as well as after. It is true that she was a joint tenant to said deposit and if she had survived her husband would have become the sole owner. It was established on the hearing that her funeral expenses have not been paid; that she left a small child about six years of age that is not provided

for; and no one can say that but for the murderous act of her husband she might have survived her husband.

It would be abhorrent to all the rules of equity and justice to permit this murderer to retain title to this money under the circumstances. Although this precise question has not been passed upon in this State so far as I can ascertain, I am opposed to subscribing to any doctrine of law that will offer a premium to husbands to kill their wives. And I am, therefore, of the opinion that equity and justice require that this deposit be turned over to the petitioner, the administrator of the deceased wife, for the purpose of paying her funeral expenses and the balance, whatever it may be, to be devoted towards the support and maintenance of the infant child.

Decree may be entered accordingly.