## Richmond.

MARY BURNLEY WILSON CHRISTIAN, ET ALS, V.
RICHARD BAXTER WILSON'S EXECUTORS.

January 16, 1930.

Absent, Chichester and Epes, JJ.

616

The opinion states the case.

*F. P. Christian, Jr.,* and *Harrison, Long & Williams,* for the appellants.

*George E. Haw, J. Jordan Leake* and *Jos. M. Hurt, Jr.,* for the appellees.

HOLT, J., delivered the opinion of the court.

This is an appeal involving the construction of the will of Richard Baxter Wilson, made necessary by the renunciation of the widow who elected to take her distributive share under the statute, Code, section 5276, in his personal estate and dower in his real property rather than to take under the provisions for her made by this decedent in his will. Mr. Wilson died on August 3, 1924. His will was probated on August 13th of that year, and her renunciation of its provisions was made on August 11, 1928.

There were four children surviving. Two, Mary Burnley Wilson, nineteen years old, and Janie Hughes Wilson. sixteen years old, were of the first marriage. Their mother, Janie Hughes Wilson, who is still living, had divorced her husband. He remarried, his second wife and widow being Margaret Booze Wilson. Of this marriage there were two children, Charles Wilson, three years old, and Richard Wilson, six months old. Charles died soon after his mother's renunciation, leaving to survive him his full brother, Richard Wilson, and his two half-sisters, who are appellants here.

The widow, Margaret Booze Wilson, and the State and City Bank and Trust Company of Richmond were nominated, appointed and qualified as executors and trustees under the will. The widow was appointed and qualified as guardian of her children, and the

State and City Bank and Trust Company was appointed and qualified as guardian for the children of the first wife.

By the first paragraph of his will the testator made provision for his debts and burial expenses. In the second article he gave to his wife his tangible personal property. By articles three and four certain other bequests were made.

In article 5 he disposed of the residue of his estate, and it is upon the construction of its provisions that this cause turns. In it he directed his trustees to hold this residuum in trust, and said:

"Section 1. I direct my trustees to set aside for the use and benefit of my wife, Margaret Booze Wilson, one-third of the said trust estate, to be known as 'Share A,' and I direct that the income from the said Share A shall be paid to her for and during her lifetime, and by income I expressly direct that I mean such as shall begin to accrue from the date of my death.

"Upon the death of my said wife, I direct my surviving trustee to transfer, set over and deliver the principal of said Share A to such persons as my said wife shall designate and appoint by a writing in the nature of a last will and testament, and I expressly give to my said wife the power of appointment over said Share A.

"Should, however, my said wife fail to leave a writing in the nature of a last will and testament, then and in that event I direct that said Share A shall be administered for the benefit of such of my children as are also children of said Margaret Booze Wilson, upon the following terms and conditions, that is to say: My trustee shall divide the said Share A into a number of shares equal to such of my children by my said wife, Margaret Booze Wilson, as are living at the time

of her death, or who have died leaving issue at that time surviving, and shall pay over to the issue of each of said deceased children one of said equal shares, the issue of each child who is dead to have one of said equal shares paid to him, her or them. The shares intended for said children of myself and my said wife who are living at the time of her death shall be held in trust for them, and each of my said children who are at that time living shall receive the income from one of such shares. Should any of our said children be girls, then each of such daughters shall respectively receive one-third of the principal of her share when she attains thirty years of age, and shall receive another one-third when she attains the age of thirty-five years, and shall receive the remaining one-third when she attains the age of forty years. If any of said children are sons, then each of said sons shall respectively receive one-third of the principal of his share when he attains the age of twenty-five years and another one-third when he attains the age of thirty years and the remaining one-third when he attains the age of forty years.

"Should any of said children who are living at the time of my said wife's death die before the principal of the share held in trust for such child has been distributed to such child as hereinbefore provided, leaving issue surviving, then upon such child's death whatever portion of his or her share shall remain undistributed at the time of his or her death shall be paid over free of all trusts to his or her issue *per stirpes*, if any, and if none, then it shall be administered for the benefit of the other children of myself by my said wife and their issue upon the identical terms hereinbefore set forth.

"I expressly direct that in the event my said wife fails to exercise her power of appointment over said

Share A, said Share A shall be administered for the benefit only of such of my issue as are also issue of my said wife, Margaret Booze Wilson, and none of it shall go to my children by my first marriage, or their issue.

"Section 2. My trustees shall divide the remaining two-thirds of my said trust estate, to be known as 'Share B,' into a number of shares equal to my children who are living at the time of my death," etc.

The testator then goes on to direct that the trustees shall pay out to these children the principal of the fund so held by them in installments and at different periods measured by their ages just as was provided for in the distribution of Share A.

Article 6 declared that the provisions made for the wife were in lieu of dower and all other legal and equitable rights which the widow might have. Article 7 provided that nothing which the testator might have given to his wife or to any children prior to the execution of the will, or which he might thereafter give them during his life, should be treated as advancements, but as gifts, and were not brought into hotchpot.

The testator was divorced from his first wife on November 2, 1921, and their property rights were settled by an agreement of date July 20, 1921. In this agreement he transferred to a trustee real and personal property valued at $35,000.00. This fund was to be held for his wife during her life and was at her death to pass to the daughters, Mary Burnley Wilson and Janie Hughes Wilson, or to their descendants *per stirpes*, and upon the death of either without descendants, then the survivor of her descendants, etc., were to take. The decree of divorce also provided that the wife, in consideration of this settlement, was to support her children. After the divorce and

before the testator's death, he gave to each of these daughters in the aggregate $8,780.50.

The painstaking and able chancellor who heard this cause was "of opinion that the effect of the election by the testator's widow, Margaret Booze Parker (then Margaret Booze Wilson), to renounce the provisions made for her in the will of her husband, Richard Baxter Wilson, and to take her dower in his real estate and her distributive share of her personal estate, as provided by statute was (1) to eliminate or destroy her life estate given her under his will over that portion of his residuary estate designated therein as 'Share A,' (2) to deprive her of the right to exercise the power of appointment likewise given her under his will over said 'Share A,' and (3) to accelerate the vesting in enjoyment of the remainder in said 'Share A,' and the other portion of the testator's residuary estate, designated in said will as 'Share B,' should suffer a ratable diminution in order to provide the widow's distributive share and dower; that the widow's renunciation, when made, related back to the date of the death of the testator and that therefore said 'Share A' diminished in quantity as aforesaid, vested as of the date of the testator's death in enjoyment in the trustees under his will to be held and administered for the benefit of the children of the testator by his second wife living at the date of his death, namely, the two infants, Charles Wilson and said Richard Wilson." And that "Share B," diminished in quantity as aforesaid on account of the widow's election, should be divided equally among the three surviving children of the testator after certain adjustments in the distribution of income made necessary by the death of Charles.

The amount set apart for the widow approximates what she would have received under the law had there

been no will, and so the only material effect of her renunciation, so far as she is concerned, is to free her estate of any of the trusts imposed by the will, but this renunciation does, in some degree, under the decree appealed from, change the proportions in which the children are to take.

Appellants contend that the executors should "pay over to the widow, in addition to the property given her in Article 2 of the will, enough of the residuary estate to make up the share or interest in the estate which she would have taken if there had been no will, leaving the remainder of the residuary estate to be paid over by the executors to the trustees appointed by the will to be held by them for the benefit of the testator's children. In this way the widow would get her legal share in her husband's estate without disturbing the special legacies, and all the testator's children would share equally in their father's estate, each taking his or her equal part in 'Share B,' as provided by the will, without diminution, except possibly in a small amount to make up the widow's share."

The widow has since remarried.

A casual reading of the will makes it clear that the testator did not intend that the children of the first marriage and the children of the second marriage should be treated alike. Those of the second marriage, in certain contingencies, were to receive all of Share A, or one-third of the residuum, and were to participate equally with the daughters in the remaining two-thirds, or in Share B. The testator said: "I expressly direct that in the event my said wife fails to exercise her power of appointment over Share A * * * none of it shall go to my children by my first marriage."

It may be that he favored the children of the second marriage because of provisions already made for those

of the first, but we are not concerned with the reasons which led to this discrimination. It appears upon the face of the will and its wisdom is not for us to question. Men make their own wills. If the widow took an absolute estate in Share A, then her children took nothing in it. They had no interest which could be accelerated.

What was the character of the estate given? Title was vested in trustees for her use and benefit, thus expressed: "I direct that the income from said Share A shall be paid to her for and during her lifetime," coupled with the power of appointment. The surviving trustee was directed to "deliver the principal of said Share A to such persons as my said wife shall designate and appoint by a writing in the nature of a last will and testament, and I expressly give to my said wife the power of appointment over said Share A." In the event that this power should not be exercised, the testator said: "In that event I direct that said Share A shall be administered for the benefit of such of my children as are also children of said Margaret Booze Wilson," upon terms and conditions in the will stated.

In *Burwell's Executors* v. *Anderson*, 3 Leigh (30 Va.) 348, Judge Tucker said: "A devise to a wife for life, and after her decease she to give the same to whom she will, passes but an estate for life with a power; yet, if an express estate for life had not been devised to the wife, an estate in fee would have passed by the other words, 8 Vin. Abr. Devise, W. a. pl. 234. Where, indeed, such an inconsistent life estate is given, the fee does not pass; for this whole matter rests upon intention. * * * And where an interest is given, generally, and without limitation, that gift is not converted into a mere power by annexing thereto a general

power of disposition. As, a devise to A, with power to dispose at pleasure, is considered as conveying property, not as conferring power; for the words of power will not be permitted to take away what without them is expressly given. 2 Preston on Est. 81–2; 13 Ves. 453. But where there is an express and inconsistent estate for life given, the construction of the instrument is altogether different."

In *Honaker Sons* v. *Duff*, 101 Va. 675, 44 S. E. 900, it appears that a testator, in the third clause of his will, gave to his son, Francis, certain real estate. Afterwards this codicil was added: "I hereby revoke and modify the third section of said will and testament as to my son, Francis C. Duff, this far only, that I will the said plantation I now live on, after death of my wife, and part of plantation I purchased from Newton and Stephen Duff, to Felix Gray, trustee for Francis C. Duff, and to be held by said trustee for the use and benefit of Francis C. Duff and his family during their lives, and then to be willed by said Francis C. Duff to whom he may choose, and that said trustee is to hold said property free from all present and future liabilities of said Francis C. Duff and for benefit of said Francis C. Duff and his family; but in all other respects the said will is my last will and testament." The court, speaking through Judge Keith, held this to be an express life estate, not enlarged by the power of appointment, and that there was neither express nor implied power of absolute disposition given to the life tenant.

Prof. Graves, in 3 Va. Law Reg. 65, makes this statement: "When an express estate for life is given, and a power of disposition over the reversion is annexed, the devisee for life will not take an estate in fee, notwithstanding the power to dispose of the inheri-

tance. The express estate for life negatives the intention to give the fee simple, and converts those words into words of mere power, which, standing alone, would have been construed to carry an interest."

■ In *Honaker Sons* v. *Duff*, *supra*, the estate was held by trustees "for the use and benefit of Francis C. Duff and his family during their lives." In this case it is held by trustees "for the use and benefit of my wife, Margaret Booze Wilson," the income to "be paid to her for and during her lifetime." In each instance an estate for life is given and given expressly, and it was not necessary that it be so labeled *in totidem verbis*.

This conclusion finds support in section 5147 of the code, where it is said: "If any interest in or claim to real estate or personal property be disposed of by deed or will for life with a limitation in remainder over, and in the same instrument there be conferred expressly or by implication a power upon the life tenant in his life time or by will to dispose absolutely of said property, the limitation in remainder over shall not fail, or be defeated, except to the extent that the life tenant shall have lawfully exercised such power of disposal."

■ This statute, the revisors in their notes say, is expressly limited to devises and bequests for life with absolute power of disposition. In such circumstances the doctrine of *May* v. *Joynes*, 20 Gratt. (61 Va.) 692, has been abolished and the estate of the remaindermen preserved. It would be unfruitful to restate that doctrine. If in the light of all that has been said it is not clear, then certainly it never will be. In its application as a positive rule of law, the intention of the testator was undoubtedly at times overborne. This was one of the considerations which led to the enactment of the statute; it is remedial and should be liberally construed.

■ The power of appointment died with the renunciation. In the will, Article 6, it is said: "The provisions I have herein made for my said wife are in lieu of dower and other legal and equitable rights in any claims against my estate." This power of appointment was for her benefit. It was general or unlimited in respect to who might be the appointees thereunder.

In *Freeman* v. *Butters*, 94 Va. 406, 26 S. E. 845, 847, it appears that a widow had a full power of appointment which she exercised in favor of volunteers. The court held that this property in the hands of such appointees was burdened with her debts and quoting from *Brandies* v. *Cochrane*, 112 U. S. 352, 5 S. Ct. 194, 28 L. Ed. 760, said: "It is indeed a rule well established in England, and recognized in this country, that where a person has a general power of appointment, either by deed or by will, and executes this power, the property appointed is deemed, in equity, part of his assets, and subject to the demands of his creditors, in preference to the claims of his voluntary appointees or legatees." 31 Cyc. 1058; 21 R. C. L. 773.

This unlimited power, were it still in being, might be exercised by the widow for the benefit of her own estate which would be manifestly unfair. In the vernacular, one cannot eat cake and have it, and so the appointment died. If it were alive it might be availed of by her creditors without her consent.

■■ How did its passing affect the remaindermen? Here the testator knew that possibly his wife might survive him for a short time only and he knew that she might renounce the provisions of his will made for her benefit and yet with this in mind he expressly stated that the fund so set apart should not go to the children of the first marriage, and this it, or a part of it, would do if brought into hotchpot.

In *American Nat'l Bank* v. *Chapin*, 130 Va. 1, 107 S. E. 636, 640, 17 A. L. R. 304, the court said: "If he (testator) had not expressly shown, as he did by the fourteenth clause of the first will (i. e., the reference to provisions in lieu of dower, etc.), that he understood and had in contemplation the possibility of her renunciation, he would have been charged with knowledge of her legal right to renounce and take her share in his estate under the intestacy laws; and he made no provision to meet that contingency. * * * The testator knew that a renunciation by her would upset and completely cut out the life estate which he was creating in her and upon which the contingencies as to the interests of the children depended. With this possibility in necessary contemplation, he made no provision to meet it. We think the result is that he must have intended that in such event the renunciation should have the effect of eliminating the period of her life-time as a factor in the estate of the children. * * * Her life estate never came into existence. It was, as we construe the wills, created for the benefit of the widow, and not for any independent purpose of postponing the division of the estate." In the course of its opinion the court quotes with approval this statement of the law from *Roe* v. *Doe*, 5 Boyce (28 Del.) 545, 93 Atl. 373, Ann. Cas. 1918C, 409: "The principle of acceleration in the vesting of a remainder by the premature termination of the preceding life estate rests upon the testamentary intention, and will be applied only when it promotes that intention, and never when it defeats it. When, therefore, it appears that the possession of the remaindermen is postponed solely for the benefit of the widow of the testator, it is presumably the intention of the testator that her renunciation of the provisions made for her for life is equivalent to her

death, and the beneficiaries entitled in remainder enter into enjoyment at once, subject to her rights at law if she so elects * * *. If the principle is based on the presumed intention of the testator, there need be no distinction made between vested and contingent remainders in its application."

In the instant case the trust was plainly for the benefit of the wife. Certainly under the very language of the will the first children had no interest therein. The entire residuum went to her children, and so the postponement of his sons' enjoyment could have arisen out of no desire of the testator to postpone it *per se*. The desire that these children should take in any event is entirely plain.

Judge Carr, in *Mitchells* v. *Johnsons*, 6 Leigh (33 Va.) 461, makes this satisfactory statement of the law applicable to the case in judgment: "She (the widow) could not claim against the will and under it, but her renunciation could not affect the rights of others under the will. The bequest to her of the slaves, etc., for life, with a power at her death to dispose of them among the lineal descendants of the testator, as she might think proper, made her a trustee for those descendants, and no act of hers, or refusal to act, could disappoint that trust."

The trust survives, and while Mrs. Wilson has resigned as trustee, the State and City Bank and Trust Company of Richmond, Virginia, remains in office with unimpaired power.

It is true that this trust, as written, gave to these children a contingent remainder, and it is likewise true that such remainders cannot usually be accelerated. *Compton* v. *Rixey's Ex'rs*, 124 Va. 548, 98 S. E. 651, 654, 5 A. L. R. 465. This for the good and sufficient reason that such acceleration might permit one

to participate in the distribution of an estate although it might thereafter be demonstrated that he had no interest therein, but, as was pointed out, in *Blatchford* v. *Newberry*, 99 Ill. 11, it is immaterial whether the remainder be vested or contingent if the time for distribution has actually arrived for in such a case the contingency is determined and the donee ascertained. 5 A. L. R. 474, note.

In *American National Bank* v. *Chapin*, *supra*, appears this statement in head note 6, amply supported by the text: "Where it appears that the possession of the remaindermen is postponed solely for the benefit of the widow of the testator, it is presumably the intention of the testator that her renunciation of the provisions made for her life is equivalent to her death, and the beneficiaries entitled in remainder enter into enjoyment at once, and in the application of this principle there is no distinction between vested and contingent remainders."

In *Compton* v. *Rixey's Executors*, *supra*, Judge Burks said: "The principle underlying this class of cases seems to be that wherever it appears that the life tenant and the remainderman are sufficiently designated, and it was intended they together should take the whole estate, acceleration will be accorded the remainderman whenever the life estate is eliminated in any manner whatever, for such must have been the intention of the testator."

In the instant case, those who are to take became certain at the date of the renunciation, and so the character of the estate which they had theretofore held became unimportant.

What is the doctrine of acceleration and when does it apply?

" 'Acceleration' is the hastening of the enjoy-

ment of an estate, which was otherwise postponed to a later period, and the doctrine is only applied in furtherance, or in execution, of the presumed intention of the testator. It is never applied to defeat the testator's intention. The intention of the testator which is to be considered in the interpretation of his will is the intention spoken by the words of the will, where he has so spoken as to disclose his intention, and not the intention to be deduced from speculation as to what he would have done had he anticipated a change in the circumstances surrounding him at the time of the execution of his will." *Compton* v. *Rixey's Ex'rs, supra.*

"This doctrine of acceleration, however, is not an arbitrary one, but it is founded on the presumed intention of the testator that the remainderman should take on the failure of the previous estate, notwithstanding the prior donee may still be alive and is applied in promotion of the presumed intention of the testator, and not in the defeat of his intention. And when it is the evident intention of the testator that the remainder should not take effect till the expiration of the life of the prior donee, the remainder will not be accelerated." 30 Am. & Eng. Ann. Cas., page 422.

"It seems to be settled by the weight of authority that 'where the widow, who has been given a life interest under the will, renounces and elects to take her dower or the statutory allowance instead, her renunciation works an extinguishment of her life estate, and accelerates the rights of the second taker.' *Fox* v. *Rumery*, 68 Me. 121; *Dean* v. *Hart*, 62 Ala. 310; 20 Am. and Eng. Enc. Law, pages 895, 897, and cases cited in note 3. The doctrine of acceleration proceeds upon the supposition that, though the ulterior devise is in terms not to take effect in possession until the

decease of the prior devisee, if tenant for life, yet that, in point of fact, it is to be read as a limitation of a remainder to take effect in every event which removes the prior estate out of the way. 1 Jarm. Wills, 539; *Blatchford* v. *Newberry*, 99 Ill. 11." *Slocum* v. *Hagaman*, 176 Ill. 533, 52 N. E. 332, 333.

█ It can never be applied when it is counter to the intention of the testator as manifested by his will. When in harmony with such purpose equity enforces it.

█ Here, as we have already seen, the postponement of the enjoyment of the sons' estate was for the benefit of the widow and not for the benefit of the daughters who were never to participate in any distribution of Share A. The widow has renounced the life estate given her and her power of appointment. There was no reason then to postpone the enjoyment of what the sons and the sons only were ultimately to take, and so we have a proper case for the application of the doctrine. It was in harmony with the testator's intent.

It only remains for us to determine if under the facts in this case the doctrine of compensation is to be applied to change or modify that of acceleration. It does limit it at times and at times blots it out.

█ "Inasmuch as the election of the widow to take against the will, by which the prior devise to her for life is terminated, may, by withdrawing a considerable part of the estate from the operation of the provisions of the will, tend to defeat some of the gifts made by the testator and affect prejudicially the interests of some of the devisees, the principle that a remainder or interest given after the termination of a life estate or interest to the testator's widow may be accelerated by the widow's rejection of her life interest and election

to take against the will, is subject to the limitation that the estate rejected by the widow must first be applied to compensate legatees or devisees disappointed by her election to take against the will." 30 Am. & Eng. Ann. Cas. page 423, note.

In *McReynolds* v. *Counts*, 9 Gratt. (50 Va.) 242, the court said: "The widow, by her renunciation of the will, disappointed the legatees to the extent of one-third of their respective legacies; by her waiver she gave up a life estate in two-thirds of the real estate. Familiar principles of equity authorize and require courts of chancery jurisdiction to sequestrate the property thus given up, and appropriate its profits to indemnify the legatees for their disappointment. *Kinnaird's Ex'r* v. *Williams' Adm'r*, 8 Leigh [35 Va.] 400 [31 Am. Dec. 658]; *Dillon* v. *Parker*, 1 Swanst. R. 359; *Gretton* v. *Haward*, 1 Swanst. R. 409."

The same principle was applied in *Mitchells* v. *Johnsons, supra,* and in *Morriss* v. *Garland's Adm'r*, 78 Va. 215, but in these cases it is important to remember that the remaindermen whose estates were sequestrated were not themselves disappointed legatees. This distinction was the governing consideration in *Lowry* v. *Commerce Trust Co.* (D. C. Mo.), 9 F. (2d) 472, 473, where the court said: "This beneficiary has suffered a loss, as well as plaintiffs, by reason of the action of the widow. Equity would not warrant the court in taking away from the Dental Society its bequests to compensate plaintiffs for their loss. It would be as reasonable to deduct from the plaintiffs' legacy or devise to compensate the Dental Society. If a general estate remained over from which compensation could be made, plaintiffs might press a claim. There is no source, however, from which compensation

can be made, without injury to another beneficiary, and it would not be equitable to permit this."

 In the case in judgment, such diminution of the estate as may follow from the widow's renunciation has been apportioned ratably by the trial court between Share A and Share B, and so rests in part upon the children of the second marriage. If it were not for another reason, this matter might be referred to a master commissioner with directions to weigh the measure of disappointment suffered by the remaindermen in Share A, and after this loss had been reinstated, the principle of restitution might apply. This we cannot do for another and compelling reason. The testator has said that it shall not be done. His language is: "I expressly direct that in the event my said wife fails to exercise her power of appointment over said Share A, said Share A shall be administered for the benefit only of such of my issue as are also issue of my said wife, Margaret Booze Wilson, and none of it shall go to my children by my first marriage or their issue."

1. The widow did not take in fee simple.

2. Her power of appointment is blotted out.

3. The trust remains.

4. The doctrine of acceleration applies without reference to the character of the remainder; and

5. Is unaffected by the principles of compensation or restoration.

The decree appealed from is without error and is affirmed.

*Affirmed.*