(No. 31627.—

G. WAYNE WELSH *et al.*, Appellants, *vs.* PERRY C. JAMES *et al.*, Appellees.

*Opinion filed November 27, 1950—Rehearing denied Jan. 15, 1951.*

DAILY, J., took no part.

SUTHERLAND & SUTHERLAND, of Peoria, for appellants.

MORGAN, PENDARVIS & MORGAN, JAMES & JAMES, and ROY P. HULL, all of Peoria, for appellees.

Mr. CHIEF JUSTICE SIMPSON delivered the opinion of the court:

Appellants G. Wayne Welsh and O. Lloyd Welsh filed a complaint in the circuit court of Peoria County praying that a constructive trust be declared in certain real and personal property, fee-simple title to which was vested in appellee Perry C. James, as surviving joint tenant. Motions to dismiss the complaint were sustained. Appellants

elected to abide by their complaint and the cause was dismissed at their costs. A freehold being involved, a direct appeal has been perfected to this court.

The complaint alleges in substance that appellants are the heirs-at-law of Reba A. James, deceased; that appellee Perry C. James and Reba A. James were husband and wife, and were the owners, as joint tenants, of four separate tracts of real estate; that they were also the joint owners of three bank accounts, totaling $8169.40; that on December 1, 1945, appellee Perry C. James unlawfully killed his wife, Reba A. James; that upon the death of Reba A. James the legal title to the real estate and bank accounts vested in appellee Perry C. James, but, because he unlawfully took the life of his wife, he holds the title to an undivided one-half of the real estate and personal property for the benefit of appellants, heirs of his wife, Reba A. James, and the other one-half interest is held in trust for his own use during his lifetime, and after his death the title vests in appellants as heirs of Reba A. James. Appellee Perry C. James, was, on December 20, 1945, declared insane but was restored to reason on February 10, 1950. Appellee, Commercial National Bank of Peoria, was appointed his conservator. The sufficiency of the complaint to charge a cause of action was properly raised by the motions to dismiss.

Appellants contend that while the legal title to the property passed to appellee Perry C. James, nevertheless equity will treat him as a constructive trustee of title because of the unconscionable mode of its acquisition, and compel him to hold it for the benefit of the heirs of his deceased wife, as aforesaid. Appellants rely on the cases of *Bierbrauer* v. *Moran,* 244 App. Div. 87, 279 N.Y. Supp. 176; *Van Alstyne* v. *Tuffy,* 103 Misc. 455, 169 N.Y. Supp. 173; *In re Santourian's Estate,* 125 Misc. 668, 212 N.Y. Supp. 116; *Sherman* v. *Weber,* 113 N.J.Eq. 451, 167 Atl. 517; *Barnett* v. *Covey,* 224 Mo. App. 913, 27 S.W. 2d 757, none

of which were decided by courts of last resort, and *Bryant v. Bryant,* 193 N.C. 372, 137 S.E. 188, as authority for their theory of the case. All of these cases appear to follow the reasoning of an early New York case, *Riggs* v. *Palmer,* 115 N.Y. 506, 22 N.E. 188.

This court had occasion to examine the principles urged by appellants in the instant case when the case of *Wall* v. *Pfanschmidt,* 265 Ill. 180, was decided. While that case is not clearly in point here, the principles there enunciated are quite applicable. The question in dispute in that case was whether a son could acquire an interest by inheritance, in the real estate owned by his father, mother and sister, who under the pleadings in the cause met their death by his unlawful acts intentionally committed. Counsel for plaintiffs in error in that case contended that if the son obtained title under the Statute of Descent, only the naked legal title passed to him; that he could not hold it for his own benefit but only as trustee *ex maleficio* and in trust for the heirs equitably entitled. The argument then, as in the case now before us, was based on like principles to those under which devises and bequests procured by fraud have been held constructive trusts, and applied, in equity, to the benefit of the persons equitably entitled thereto. This argument was supported by the holding of the New York Court of Appeals in *Riggs* v. *Palmer,* 115 N.Y. 506, 22 N.E. 188, which has been followed by the cases relied upon by appellants.

Counsel likewise argue that public policy will forbid such a construction of the law as will encourage crime or give reward for its performance. We pointed out, in *Wall* v. *Pfanschmidt,* that when the sovereign power of the State has by written constitution declared the public policy of the State on a particular subject, the legislative and judicial departments must accept such declaration as final. We then said that to hold that the son obtained the naked legal title, but only held as trustee, would be to hold that by

his crime he had forfeited the right to inherit, contrary to our State constitution which provides against corruption of blood or forfeiture of estate by one convicted of crime; that the Criminal Code fixed the punishment for crime; and that public policy does not demand forfeiture, for the demands of public policy are satisfied by the proper execution of laws and the punishment of crime. This court did not adopt the reasoning of the New York court in *Riggs* v. *Palmer,* 115 N. Y. 506.

The complaint alleges that at the time of the death of Reba A. James certain bank accounts were owned jointly by Perry C. James and Reba A. James. There is no direct allegation that these joint accounts were accompanied by written joint-survivorship contracts with the respective banks. The complaint does contain an allegation that title to the joint bank accounts vested in Perry C. James at the time of the death of his wife, and the remaining allegations and the prayer of the complaint treat the joint bank accounts the same as the real estate, which was held in joint tenancy. It is not urged that the joint accounts were subject to the Statute of Descent, and counsel for both parties have treated these accounts in their respective briefs as being subject to the same rules as those applied to joint tenancy in real estate. Section 2 of the act concerning joint rights and obligations provides particularly for the right of survivorship, when a deposit in a bank shall be made in the names of two or more persons, when an agreement permitting payment to any one of such persons, whether the other or others be living or not, was signed by all the persons at the time the account was opened or soon afterward. Ill. Rev. Stat. 1949, chap. 76, par. 2.

Under a similar statute the principles here involved were determined adversely to appellants in *Oleff* v. *Hodapp,* 129 Ohio St. 432, 195 N.E. 838, one of the few decisions in this country where a court of last resort has considered the question. In that case, the nephew of one party to a

joint-survivorship account with a building and loan association was permitted to take the whole account despite the fact that he murdered his uncle, the other party to the contract. The Ohio court appropriately said, "We have heretofore stated that there is no statutory law in Ohio that deprives Tego of his right to this account. Counsel insist that Tego's right should be denied him because to allow it would be in contravention of sound public policy and place a premium on murder. We are not subscribing to the righteousness of Tego's legal status; but this is a court of law and not a theological institution. We have no power to attaint Tego in any way, shape, or form. Property cannot be taken from an individual who is legally entitled to it because he violates a public policy. Property rights are too sacred to be subjected to a danger of that character. We experience no satisfaction in holding that Tego is entitled to this account; but that is the law, and we must so find." This language of the Ohio court applies with equal force to the questions involved in the case now being considered.

Appellee Perry C. James did not acquire title through a devise, bequest or by inheritance. His title was in joint tenancy with his wife, Reba A. James. An estate in joint tenancy can only be created by grant or purchase,—that is, by the act of the parties. It cannot arise by descent or act of law. (*Deslauriers* v. *Senesac,* 331 Ill. 437.) Joint tenants have one and the same interest accruing by one and the same conveyance, at one and the same time, and held by one and the same undivided possession. (*Porter* v. *Porter,* 381 Ill. 322.) A joint tenancy is a present estate in all the joint tenants, each being seized of the whole, and an essential characteristic of the estate is the right of survivorship,—that is, the right of the last survivor to take the whole. *Partridge* v. *Berliner,* 325 Ill. 253.) In *Duncan* v. *Suhy,* 378 Ill. 104, we cited with approval Tiffany on Real Property, Third Edition, sec. 418, which

states the nature of a joint tenancy as follows: "In the case of a joint tenancy all the tenants have together, in the theory of the law, but one estate in the land and this estate each joint tenant owns conjointly with the other tenants. All the joint tenants, whether only two or more than two, constitute for some purposes but one tenant, or, as it has been more specifically stated, each joint tenant is regarded as the tenant of the whole for purposes of tenure and survivorship while for purposes of alienation and forfeiture each has an undivided share only."

In refusing to divest a husband of title to property because he had murdered his wife with whom he held an estate by entireties, the court in *Beddingfield* v. *Estill*, 118 Tenn. 39, 100 S.W. 108, quoting from a former case of that State, said, "The estate of a husband and wife is a unit, not made up of any divisible parts subsisting in different natural persons, but is an indivisible whole, vested in two persons who are actually distinct, yet who, according to legal intendment, are one and the same. On the death of husband or wife, the survivor takes no new estate or interest,—nothing that was not in him or her before. It is a mere change in the properties of the legal person holding,—not of the estate holden." To hold that appellee Perry C. James, although vested with legal title, held it as trustee only, would be to hold that by the unjustifiable killing of his wife, for which he has not been convicted, he forfeited his right to an estate in property which was vested in him, not by the death of his wife, but by the instrument creating the joint tenancy long before her death. There is no law in this State that deprives appellee of his vested right in the whole of the estate as the surviving joint tenant. Our State constitution expressly provides that all penalties shall be proportioned to the nature of the offense, and that "no conviction shall work corruption of blood or forfeiture of estate; * * *." Constitution of 1870, art, II, sec. 11.

Our Criminal Code makes unjustifiable homicide punishable by death, or by imprisonment in the penitentiary. These provisions are declarations of the public policy of this State. Such declarations of public policy are final and binding on the judicial department of government. (*Collins* v. *Metropolitan Life Ins. Co.* 232 Ill. 37.) It necessarily follows that the decree of the circuit court of Peoria County must be affirmed.
*Decree affirmed.*

Mr. JUSTICE DAILY took no part in the consideration or decision of this case.