# Richmond

JAMES W. BLANKS, GUARDIAN AD LITEM FOR WILLIAM HENRY JIGGETTS, AND WILLIAM HENRY JIGGETTS, AN INFANT V. RANSOME JIGGETTS, LEE ANNA HARRIS AND SALLIE JIGGETTS BRACEY.

May 7, 1951.

Record No. 3775.

Present, All the Justices.

The opinion states the case.

*Blanks & Geyer* and *Howard G. Turner,* for the appellants.

*Y. Melvin Hodges,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

Micajah Jiggetts and Estella Jiggetts, his wife, citizens of Mecklenburg County, Virginia, were the owners of two tracts of land, which had been conveyed to them as joint tenants, by deeds, dated in 1925 and 1937. On September 5, 1929 these parties executed their joint will, the second section thereof reading as follows: "Second: We hereby direct that the survivor herein shall take all of the property of the first of us to die, both real and personal, for life, with complete power to dispose of

the whole or any part thereof in such manner as he or she may see fit, and whatever remains undisposed of at the death of the said survivor, we direct that it shall pass to our issue, if any, and in the event that there is no such issue, then one-half of such estate shall pass to our adopted daughter, Annie Cage Townes, and the other half to be divided equally among our nearest relatives living at the death of the survivor; that is to say, one-half of the remaining one-half to the nearest relatives of Micajah Jiggetts and the other one-half thereof to the nearest relatives of Estella Jiggetts''.

Micajah and Estella Jiggetts had one child born to them, a son named William Henry Jiggetts, who is an infant and was born several years after the execution of the joint will.

In the year 1941 Estella Jiggetts departed this life, and at the time of her death the status of their real estate was the same as it was when the will was executed. On December 1, 1941, several days before the joint will was probated, but after the death of Estella Jiggetts, Micajah Jiggetts executed his will, the material part thereof being as follows: "Second: All the rest, residue and remainder of my property, real, personal and mixed, wheresoever the same may be situated, I give, devise and bequeath to my son, William Henry Jiggetts, in fee simple and absolute property''.

On December 3, 1948, this infant son, William Henry Jiggetts, the appellant, murdered his father by shooting him in the head while he was asleep. After the murder the boy made a complete confession and stated that he had killed his father for the express purpose of obtaining the property, that he had seen his father's will and knew of its provisions.

Soon after William Henry Jiggetts had been convicted of the murder of his father, this suit was instituted for the purpose of having an adjudication that the son was barred from taking as a devisee under his father's will and also praying to have the land sold for partition.

The case was duly referred to a commissioner in chancery, who made his report that William Henry Jiggetts should not take under his father's will; that the father had a valid power of appointment under his wife's will, and by his will, he exercised the power and that since the son had murdered the father for the confessed purpose of obtaining the property, he was barred from taking anything as devisee.

Exceptions were duly filed to the report of the commissioner, but the same was confirmed by the court and from the decree confirming this report, an appeal was allowed to this court.

Two assignments of error were relied on by appellants, as follows: "First—The Court committed error in holding that Micajah Jiggetts, under the will of Estella Jiggetts, took the right of disposition after death, or the right of appointment, of the real estate standing in the name of Estella Jiggetts. Second: The Court committed error in holding that William Henry Jiggetts is barred from taking the real estate standing in the name of Estella Jiggetts, under the will of the said Estella Jiggetts."

As the son murdered the father to obtain his property, he cannot, by virtue of the provisions of Section 64-18 of the 1950 Virginia Code, acquire by descent, distribution or by will, any interest in the estate of his father; therefore, the correct conclusion of the issues involved in the first assignment of error necessitates our determination of what estate Micajah Jiggetts took under the will of Estella Jiggetts. Was the power of appointment to Micajah Jiggetts, under the will of his wife, limited to an *inter vivos* disposition, or could it be exercised by him under his will, by which the title to the wife's devised share in the real estate passed to the appointee, William Henry Jiggetts? If the power is limited to an *inter vivos* disposition, then the son takes under his mother's will, and if, on the other hand, the power can be exercised by the father in his will, the son would take under the father's will, which right would be denied him for the reasons above stated.

The second paragraph of the joint will consists of one long sentence, broken into several sections. Reading this paragraph or sentence by sections, in chronological order, we find the following: "Second: We hereby direct that the survivor herein shall take all of the property of the first of us to die, both real and personal for life,"—This section standing alone grants merely a life estate. The next section reads: "with complete power to dispose of the whole or any part thereof in such manner as he or she may see fit,". Had the sentence stopped here, it is apparent that the express life estate, coupled with the additional power of complete disposition, under the rule of *May* v. *Joynes*, 20 Gratt. (61 Va.) 692, would enlarge the estate from an estate for life into a fee simple estate. But this sentence of the will continues in the conjunctive: "and whatever remains undis-

posed of at the death of said survivor, we direct it shall pass to our issue, if any, and in the event there is no such issue, then one-half of such estate shall pass to our adopted daughter, Annie Cage Townes, and the other one-half to be divided equally among our nearest relatives living at the death of the survivor; that is to say, one-half of the remaining one-half to the nearest relatives of Micajah Jiggetts and the other one-half thereof to the nearest relatives of Estella Jiggetts''.

In the construction of a written instrument certain well-established rules must be followed: ''Isolated clauses or sentences in a will are not to be considered by themselves, but the will is to be considered as a whole, and its different clauses and provisions examined and compared, so as to ascertain the general plan and purpose of the testator if there be one.'' *Home Mission Board, etc.* v. *Kirkpatrick,* 181 Va. 395, 25 S. E. (2d) 281.

This paragraph ''Second'' of this joint will is the only part under consideration, no other clause of the will throws any light on the subject. The sentence contains one hundred and forty-two words, appellees would employ only the first forty-eight words, and would completely blot out the ninety-four remaining words which are used by the testatrix for the express purpose of saying just what she desires done with whatever portion of her estate which remains undisposed of at the death of her husband.

The clear intent of the testatrix was, first, that the survivor, under the joint will, should have the estate for life; second, the survivor should have the complete power to dispose of the whole estate or any part thereof *inter vivos;* but, third, if any portion remained after the death of the survivor, it was to pass as she directed in her will and not as he might direct in some later will executed by him. It is palpably clear that Estella Jiggetts had a plan of her own for the ultimate disposition of her estate, if for any reason her survivor did not dispose of the estate during his lifetime. ''In construing a will, testatrix's intent is the polar star for guidance of the court and such intent must be collected from the language of the will examined as a whole'', *Potts* v. *Rader,* 179 Va. 722, 20 S. E. (2d) 690. The evident intention of Estella Jiggetts precludes any conjecture as to any power of appointment, either special or general, under the will.

It must be concluded, therefore, that the rule of *May* v. *Joynes, supra,* has no application to this case and that under

Estella Jiggetts' will, the husband took an express estate for life, remainder to William Henry Jiggetts, subject to defeasance thereof by the disposition of the life tenant *inter vivos.*

■ Section 5147 of Virginia Code of 1919, now Section 55-7, Virginia Code of 1950, applies here. It provides: "If any interest in or claim to real estate or personal property be disposed of by deed or will for life, with a limitation in remainder over, and in the same instrument there be conferred expressly or by implication a power upon the life tenant in his lifetime, or by will, to dispose absolutely of such property, the limitation in remainder over shall not fail, or be defeated, except to the extent that the life tenant shall have lawfully exercised such power of disposal. A deed of trust or mortgage executed by the life tenant shall not be construed to be an absolute disposition of the estate thereby conveyed, unless there be a sale thereunder."

This section as applied to the cases falling within the meaning thereof has been carefully and exhaustively analyzed by this court in the cases of *Christian* v. *Wilson,* 153 Va. 614, 151 S. E. 300; *Southworth* v. *Sullivan,* 162 Va. 325, 173 S. E. 524.

The second assignment of error challenges the court's decree holding that William Henry Jiggetts is barred from taking the real estate in the name of his mother under her will—Section 64-18 of Virginia Code of 1950, provides: "No person shall acquire by descent or distribution, or by will, any interest in the estate of another whom he has killed in order to obtain such interest".

■ The purpose of the statute is to make effective, to a limited extent, the majority rule that would prevent this son from acquiring by descent or distribution, or by will, an interest in his father's estate. The reason the son is allowed the benefit of the shortened life estate is because this statute does not prohibit it.[1] Code, section 64-18 is a penal law, divesting a person of rights otherwise accorded him under the law, and it must be strictly construed.

In the recent case of *Welsh* v. *James,* 408 Ill. 18, 95 N. E. (2d) 872, the Supreme Court of Illinois, speaking through Chief Justice Simpson, held, that the "Criminal Code fixed the punishment for crime; and that public policy does not demand forfeiture, for the demands of public policy are satisfied by the proper execution of laws and the punishment of crime". In his

[1] Ward v. Ward, 174 Va. 331, 6 S. E. (2d) 664; Garner v. Phillips, 229 N. C. 160, 47 S. E. (2d) 845; 16 Am. Jur., page 847, § 75.

opinion, the Chief Justice quotes with approval from the Ohio case of *Oleff* v. *Hodapp,* 129 Ohio St. 432, 195 N. E. 838, as follows: " 'We have heretofore stated that there is no statutory law in Ohio that deprives Tego of his right to this account. Counsel insist that Tego's right should be denied him because to allow it would be in contravention of sound public policy and place a premium on murder. We are not subscribing to the righteousness of Tego's legal status; but this is a court of law and not a theological institution. We have no power to attaint Tego in any way, shape, or form. Property cannot be taken from an individual who is legally entitled to it because he violates a public policy. Property rights are too sacred to be subjected to a danger of that character. We experience no satisfaction in holding that Tego is entitled to this account; but that is the law, and we must so find.' "

We have hereinbefore decided that Micajah Jiggetts did not have power to appoint by will, and that his will was in no way a conduit of title from Estella Jiggetts to William Henry Jiggetts, since the realty in question vested in the latter from the date of probate of Estella Jiggetts' will, subject to defeasance thereof by Micajah Jiggetts' disposition *inter vivos.*

Micajah Jiggetts having failed to dispose of Estella Jiggetts' interest *inter vivos,* the termination of his life estate, by any cause, immediately made available to William Henry Jiggetts the remainder in fee which had vested in him under his mother's will. Therefore, in reality, by virtue of the falling in of the life estate, he has taken no interest in the estate of Micajah Jiggetts. It is true that the reprehensible act of the appellant accelerated the falling in of his father's life estate and enriched him by vesting in him the immediate usufruct from the estate which normally he could not expect until sometime in the future, if at all. However, this does not result in his acquiring any interest in the estate of his father, which is all that is denied him by the terms of Section 64-18 of the Code.

For the reasons herein expressed the decree complained of is reversed and the case remanded with directions that a decree be entered in the court below adjudicating that upon the death of Micajah Jiggetts, William Henry Jiggetts became, under the provisions of his mother's will, the fee simple owner of the real estate, of which she died seized and possessed.

*Reversed and remanded.*