## CIRCUIT COURT OF FREDERICK COUNTY

Robin Kelley Brown et al.

v.

John W. Brown, III, et al.

July 14, 1972

BY JUDGE ROBERT K. WOLTZ

In 1962 by the same deed, three parcels of real estate were conveyed "unto John W. Brown, III, and Ruth O. Brown, his wife, jointly for life, with remainder to the survivor in fee simple, as at common law." In 1969 Brown killed his wife who was survived by five children of their marriage, and about two months thereafter, conveyed one of the parcels to the Loftons, husband and wife, who are also defendants.

Subsequently, three of his infant children by next friend filed their bill of complaint against Brown, his grantees the Loftons, his other two children, also infants who apparently did not wish to be complainants, and three other parties as to two of whom demurrers to the bill have been sustained.

The bill alleges the above two conveyances, the survival of the decedent by the five children, that Brown feloniously killed the decedent, his wife, that she was younger, in better health, and had a longer life expectancy than he, that his grantees, the Loftons, had notice of the fact of his killing the decedent, and that Brown claims title to all personal property which was jointly owned by him and the decedent.

The bill prays for an injunction against further sale of any real or personal property of which Brown and the decedent were possessed as of the date of her death, that all moneys received from the sale of any such real or personal properties sold subsequent to her death be escrowed pending suit, that the Loftons be enjoined from selling or encumbering the realty purchased from Brown and be directed to

reconvey the same to the children, and finally, that a constructive trust be imposed on that real and personal property which is the subject of the suit for the benefit of decedent's surviving children and that during the continuance of the constructive trust, Brown be prohibited from selling or encumbering the corpus of that trust. Demurrers were filed thus creating the issue to be decided.

It is now agreed that subsequent to the filing of those pleadings, Brown was convicted of murder in the first degree of the decedent and sentenced to imprisonment. There is no claim by the complainants that he committed the crime with the purpose and intent of acquiring any of the property which is the subject of suit.

The moral problem of a killer acquiring or accelerating his acquisition of property as a result of the felonious homicide of his victim has posed genuine legal difficulties for the courts. In view of the substantial percentage of homicides involving members of a family group and the great variety of situations in which the problem can present itself,[1] it is surprising that the body of case law on the subject is not somewhat larger than it is.

In those jurisdictions which, in the absence of specific statute, deny the killer the intended or incidental fruits of his crime, the moral demands of the situation are given effect and judicially elevated to the status of public policy generally by invocation of the legal maxim that no one should be allowed to profit by his own wrong.[2] In other jurisdictions, likewise in the absence of statute, the

---

[1] See Annotation, 24 A.L.R.2d 1120, on killing of life tenant by remainderman or reversioner; Annotation, 32 A.L.R.2d 1099, on killing by one tenant of the other in estates with survivorship; Annotation, 39 A.L.R.2d 477, killing of ancestor and intestate succession, and its footnote references to cases and annotations on the problem with respect to life insurance proceeds, community property, dower, homestead and similar marital estates.

Some related problems, principally as a result of statute, are the degree of homicide involved, whether the purpose of the homicide was to acquire the property, the affect of conviction or acquittal of the homicide on civil proceedings, as well as burdens of proof and defenses in civil litigation.

[2] In these jurisdictions application of the rule varies from denying the killer any rights, Riggs v. Palmer, 115 N.Y. 506, 22 N.E. 188, 5 L.R.A. 340 (1889); to allowing legal title to vest in him fully but imposing a constructive trust upon the property for the benefit of the victim's heirs or others, Bryant v. Bryant,

courts while recognizing deep moral implications refuse to give them primacy as public policy over firmly established laws of property, succession and the like. In addition, those jurisdictions often state that public policy is satisfied by the execution of the criminal law in such cases, point to constitutional or statutory strictures against attainder, corruption of blood and forfeiture, doubt the common law forbad a murderer taking property as a result of his crime, or declare if a different public policy is to be established, such is the prerogative of the legislature.[3]

Our only legislative enactment which by its express terms deals with the subject of homicide and a resulting material gain of some sort is § 64.1–18, Code of Virginia 1950.[4] Neither inheritance nor will nor life insurance policy being involved in this case, the statute obviously has no application, though its existence is not without importance to a decision as will be mentioned below. All parties agree

---

193 N.C. 372, 137 S.E. 188, 51 A.L.R. 1100 (1927).

So far as tenancies by the entirety are concerned, the constructive trust is imposed on the whole of the estate succeeded to by the killer, to obviate "the reproach of permitting an atrocious criminal to profit by his perfidy," Bryant, supra, or on varying portions less than the whole. Generally, see Annotation, 32 A.L.R.2d, supra, sect. 5. In some jurisdictions, the constructive trust is not used, but the homicide, severing the marital relationship, is held to convert the estate by entirety into a tenancy in common. Ibid.

[3] E.g., Oleff v. Hodapp, 129 Ohio St. 432, 195 N.E. 838, 98 A.L.R. 764 (1935); Welsh v. James, 408 Ill. 18, 95 N.E.2d 872 (1950); Re Duncan Estates, 40 Wash. 2d 850, 246 P.2d 445, 39 A.L.R.2d 473 (1952).

[4] Section 64.1–18. When homicide to bar acquisition of estate or proceeds of life insurance policy. — No person shall acquire by descent or distribution or by will any interest in the estate of another, nor receive any payment under any policy of life insurance upon the life of another, for whose death such person has been convicted of murder. In such event, should any life insurance be payable, then it shall be paid as if such person predeceased the insured to such other person as may be named in the policy, or, if no such other person is named, then to the estate of the insured. Any insurer making payment according to the terms of its policy or contract shall not be subjected to additional liability by the terms of this section if such payment is made without notice of circumstances bringing it within the provisions of this section.

Prior to its various amendments, this statute applied only to acquisition by descent, distribution or will; and though conviction of murder was not required, the killing must have been in order to acquire the property interest otherwise available by inheritance or will.

that there is no controlling statute, and, faced with that, the complainants invoke general equity principles and seek the imposition of a constructive trust over the res.

The complainants also treat the estate in the realty as a tenancy by the entirety in a fee. In view of the words of the granting clause, this is very questionable.[5] Some metaphysical exercises and contortions of construction are required to determine under the rules of conveyancing and statutorily altered common law principles of real property just what estate or estates may be created by the granting clause of this deed. Resort to such mental gymnastics is unnecessary in this case as no party questions but that on the death of his wife, John Brown under the language of the deed became the sole owner of the fee in the realty.

This being admitted, it is unavoidable that he became such by virtue of the terms of the deed and as a result of the grant contained therein which became set, binding and effective as of the date of its delivery without regard to the transpiration of subsequent events. The property has not devolved upon him nor has he derived his title and interest from his victim. Though the eventual actuality of his exclusive full legal and equitable ownership of the fee may have been conjectural at the time of deed delivery, his inchoate right to that ownership became fixed at such time to be consummate subject only to his surviving his fellow grantee. The deed attaching no conditions with respect to the circumstances of her death prior to his, that he was the intentional and direct instrument of it is ineffective to alter the purport and legal consequences of the grant.

It is that legal consequence which complainants seek to avoid by use of a constructive trust. This facile tool from equity's array of such is employed in circumstances where legal title to property has been acquired by one through fraud, misrepresentation, duress, undue influence and like chicane. It is used to deny one, despite his rights under application of strict legal principles, the benefit of his

---

[5] At common law, a tenancy by the entirety could exist in estates for years, life, in tail or in fee. Along with the five unitites of time, title, interest, possession, and person (based on the fictional unity of husband and wife), a distinctive feature was the incident of survivorship as was the related fact that the tenants held not by moieties but per tout et non per my. For the history of statutory inroads on estates with survivorship beginning at an early date in the Commonwealth, see Allen v. Parkey, 154 Va. 739, 149 S.E. 615 (1929).

unconscionable ownership. This is accomplished by imposition of a trust by operation of law on such property for the benefit of another, thus restoring or bestowing the benefit to or on another whose claim thereto would be pre-eminent to the wrongdoer's save for the latter's superior right resulting from the application of inexorable legal principles. It is imposed regardless of the wrongdoer's intent that a trust be established and in fact contrary to it. *See generally*, 19 M.J., *Trust and Trustees*, §§ 48 *et seq.*; *Pair v. Rook*, 195 Va. 196 at 213, 77 S.E.2d 402 (1950).

The effect of the constructive trust is to allow the cheat, in deference to strict legality, to retain his bare legal title to the property he had wrongfully acquired; but, in obedience to equity, to separate from that title the use and benefit of the property and vesting them in another who is rightfully entitled thereto and is wrongfully deprived thereof. By use of this device, the complainants in the case at bar would let the legal title remain with the murderer where it is now but bestow the beneficial interest upon the presumptive successors in interest to the victim. Thus the parties respectively would receive their just deserts and a public policy fulfilling the demands of the moral law would be effectuated.

Such or similar implementation has been given in other jurisdictions as indicated in footnote 2, the *Bryant* case mentioned being a good example in a fact situation strikingly similar to the care at bar. The imposition of a constructive trust under the circumstances present here has never been considered by the Supreme Court of this jurisdiction.[6]

It can be wondered if those courts which have denied the perpetrator partial or all rights to the property of the victim of his felonious homicide have not been carried away by a justifiable attachment to the moralities of the situation at the expense of the law. Referring back to footnote 2, the New York case of *Riggs* simply wrenched the whole interest in the property, including legal title, from the murderer, giving the full legal and equitable interest to others. As indi-

---

[6] Such a possibility was not even broached in Blanks v. Jiggetts, infra. In Ward v. Ward, 173 Va. 331 (1940), where wife killed husband, no mention was made of a constructive trust, though an appeal argument for the first time was made for a resulting trust in favor of husband's estate over a one-third interest in realty as to which he had no legal title but had had a possible equitable title to that extent by virtue of claimed payments on the purchase price.

cated in that footnote, where a tenancy by the entirety was owned by murdering and murdered spouse, other courts reached an extremely practical as well as appealing result simply by mandating a conversion of the tenancy into one in common.[7] Finally, where cognizance is given to both the legal and equitable interests in survivorship property of murderer and murdered as in *Bryant, supra,* the constructive trust becomes more a tool of convenience to reach a worthy moral end than one of equity to achieve a just solution in law.

This creature of equity is not a panacea for all moral wrongs, however related to property rights. The essence of the situation to which it applies is a wrongdoer's fraudulent intent directed toward his unconscionable gain of property, accomplished through the means of artifice such as fraud, misrepresentation or concealment, or force such as duress or undue influence, brought to bear actually or constructively upon the will of the victim to deprive him of property or prevent his rightful receipt of it, as a result of which such will is misled or persuaded contrary to what it would genuinely be in the absence of such artifice or force.

Whatever other factors may be needed to make relief by way of constructive trust appropriate, at least these elements of wrongful intent, unconscionable gain, fraudulent means and effect on will are present, conjoined in a pattern of causal interrelation. That no such conjunction exists in this case is so apparent that an attempted demonstration of the proposition would be tedious. The case simply lacks that essential dishonesty of dealing against which a constructive trust may be brought to bear.

In *Blanks v. Jiggetts*, 192 Va. 337, 64 S.E.2d 809, 24 A.L.R.2d 1114 (1951), decided at a time when § 64.1–18 still required that the killing be done with the intent to acquire the property before the killer would be barred of it by way of descent, distribution or will, a son killed his father with the admitted intent of acquiring the father's property. The father was life tenant with full power of *inter vivos* disposition over certain realty under the will of his wife, and the son

---

[7] There is authority for conversion of a survivorship estate into a co-tenancy in Virginia in case of the dissolution of a marriage by an a vinculo decree of divorce; but severance of the Gordian knot of survivorship is by the sword of legislative enactment and not of judicial decision. Section 20-111, Code of 1950. The equities of reaching such a result are not without great attraction, but the courts deferred to the legislature to make this policy.

was the remainderman. The court held that the son was entitled to receive his remainder interest.

It is true that in that case, the complainants did not seek a constructive trust but rather tried, unsuccessfully, to bring the disputed property into the estate of the father by application of the doctrine of *May v. Joynes*[8] and thus make it subject to the provisions of the statute. By testamentary construction, the court found that the father had only a life estate and not a fee in the disputed property, as a consequence of which it was not in his estate and the statute was therefore inapplicable to prevent the son from taking his remainder interest.[9]

However, it does quote from *Welsh v. James*, footnote 3, *supra*, "that public policy does not demand forfeiture, for the demands of public policy are satisfied by the proper execution of laws and the punishment of crime." It also quotes with approval *Welsh's* quote of *Oleff v. Hodapp*, footnote 3, *supra*, that "Property cannot be taken from an individual who is legally entitled to it because he violated a public policy. Property rights are too sacred to be subjected to a danger of that character."

It continues to say "[The father] having failed to dispose of [the mother's] interest *inter vivos*, the termination of his life estate, *by any cause*, immediately made available to [the son] the remainder in fee which had vested in him under his mother's will." (Emphasis added.) Further: "It is true that the reprehensible act of the appellant accelerated the falling in of his father's life estate and enriched him by vesting in him the immediate usufruct from the estate which normally he could not expect until sometime in the future, if at all." By parity of reasoning, if the homicidal remainderman was entitled to take in that case, so is the homicidal surviving tenant in this.

---

[8] 61 Va. (20 Gratt.) 692 (1871). The doctrine relates to the enlargement of a life estate coupled with a power of complete disposition into a fee.

[9] If under the unusual provisions of the granting clause in the deed, it can be assumed that the present interest of the defendant Brown is at least in part the result of the falling in of his wife's portion of their purported joint life estate, due to his murder of her, then the case to the extent of that property interest so acquired comes very close to Blanks, especially since the statute there is now amended to omit the requirement that the killing be in order to obtain the interest.

The ethical demand on conscience of the complainants' case is strong and appealing. Nevertheless, the judge must resist the very real temptation to seek cure of every ill through the use of his official authority to administer legal potions believed by him efficacious to morality and good policy. The clear implication of *Blanks* is that where no statute interposes to prevent a murderer from becoming as a result of his crime in some way entitled to property, which property would otherwise be his legally, there is no bar to his acquiring it.

While condemning Brown's crime as it justly deserves, yet "this is a court of law and not a theological institution." *Blanks* quoting *Welsh, supra,* quoting *Oleff, supra.* If corrective measures in cases such as this are in order or to be had, those determinations are for the legislature. Legislators are perhaps just as good theologians as judges, and additionally, as elected representatives of the sovereign people, they have a warrant to declare public policy in these matters quite superior to that of the judiciary.

No sufficient reason appears why the legal principles enunciated above should not apply to the personal property as well as the realty in this suit. Therefore, the demurrers are sustained. The bill of complaint having described ownership of the personalty merely as joint without any specification as to survivorship, this decision is to be construed to prevent the right of the decedent's estate from recovering by whatever procedures may be available any of her personal property which was held jointly with her husband without the incident of survivorship.