ALBERT W. JOHNSTON ET AL., APPELLANTS, V. WILLIAM
FRANK ET AL., APPELLEES.

FILED NOVEMBER 12, 1914. No. 17,833.

1. **Executors and Administrators:** SETTING ASIDE ADMINISTRATOR'S DEED: FRAUD: BURDEN OF PROOF. In an action to set aside an administrator's deed for fraud and conspiracy, the burden of proof is on the plaintiff to establish the alleged fraud and conspiracy by a preponderance of the evidence.

2. ———: SALE OF LAND: CLAIMS. The land, which is not the family homestead of an intestate, may be sold by the administrator when necessary to pay the debts of the decedent; and a claim by his widow for money advanced by her in paying a portion of such debts may be properly allowed as a claim against his estate.

3. **Homestead:** SUIT TO SET ASIDE ADMINISTRATOR'S DEED: SUFFICIENCY OF EVIDENCE. The testimony examined, and found sufficient to establish the fact that the land in question was not the homestead of the decedent at the time of his death.

4. **Executors and Administrators:** APPOINTMENT: VALIDITY: BURDEN OF PROOF: PRESUMPTIONS. Where the plaintiff alleges that the appointment of the widow as administratrix of the estate of her deceased husband was void because her appointment was not made at the time fixed by the published notice, it is incumbent upon the plaintiff to establish that fact by a preponderance of the evidence. The county court being a court of record, there is a presumption in favor of the regularity of its proceedings; and the introduction of only a part of the proceedings in evidence will not rebut the presumption of regularity.

5. ———: SUIT TO SET ASIDE ADMINISTRATOR'S DEED: SUFFICIENCY OF EVIDENCE. Where it appears from the evidence that the administratrix filed a petition in the district court of the county where the land was situated; that notice of the hearing of the application was duly served on all persons interested in the estate; that on the hearing of the application the license was granted, and was filed with the clerk of the court; that the administratrix thereafter filed the bond and the oath required by law in such cases, and after giving proper notice sold the land at public sale for its full value, for the purpose of paying the debts of her deceased husband; that the sale was examined and confirmed, and a deed made to the purchaser under the order of the court; that the license was recorded in the complete record; all of the proceedings.

being regular, the deed of the administratrix will not be declared void.

6. **Dicta Disapproved.** The dicta in *Stack v. Royce*, 34 Neb. 833, and *Veeder v. McKinley-Lanning Loan & Trust Co.*, 61 Neb. 892, pointed out in the opinion, disapproved.

APPEAL from the district court for Morrill county: RALPH W. HOBART, JUDGE. *Affirmed.*

*Williams & Williams* and *Hoagland & Hoagland,* for appellants.

*G. J. Hunt, F. A. Wright* and *J. G. Mothersead, contra.*

BARNES, J.

Action by the heirs of William Johnston, deceased, to set aside an administrator's deed and quiet their alleged title to a part of the west half of the southwest quarter of section 26, township 21 north, of range 52 west of the 6 P. M., situated in Morrill county, Nebraska.

Plaintiffs' petition set out the title of William Johnston to the land, his death, and their heirship. The petition further set forth the probate proceedings and administrator's sale of the land in question to the defendant William Frank, and the conveyance by him to his codefendant, the Tri-State Land Company. The petition specifically pointed out the objections which plaintiffs contend render void the title acquired by Frank. They are, in substance, as follows: First. That the land was the family homestead of William Johnston at the time of his death, and therefore exempt from sale for the payment of his debts. Second. It charged fraud and conspiracy by the defendants to defraud the plaintiffs of their title. Third. The petition set forth certain defects in the notice of application for letters of administration, and alleged that the hearing was not had on the day set. Fourth. It was alleged that there were no debts against the estate of William Johnston, deceased. Finally, it was alleged that the license to sell was void because of an alleged failure to serve a copy of the notice to show cause on the infant heirs.

Defendants in their answer admitted that the title to the premises was formerly in William Johnston. The relationship of the plaintiffs to William Johnston, and the appointment of the administratrix, the procuring of the license to sell, the administratrix's sale, and the conveyance of the land by Frank to the Tri-State Land Company were also admitted. Defendants denied that the land was the family homestead of William Johnston, deceased, and denied all allegations as to fraud and irregularities in the probate proceedings and the sale of the land by the administratrix. The trial resulted in a judgment for the defendants. From this judgment the plaintiffs have appealed.

The evidence discloses that William Johnston died intestate some time in the year 1904; that at the time of his death he was running a hotel in Bayard, Nebraska, and had left the land in question some five years before his death. It also appears that he was indebted to several persons, including bills for lumber, money due a building and loan association, grocery bills, meat bills, and other debts, some of which his widow, Anna C. Johnston, had paid by money advanced by herself. Mrs. Johnston testified that she was desirous of paying these debts, and she therefore concluded to sell the land to William Frank, who was at that time purchasing large amounts of land in that vicinity. Frank testified as follows: "I stated that I would purchase the land, and we (meaning himself and Mrs. Johnston) agreed upon the price. But on looking up the record I told her that it would be necessary that the land be sold at judicial sale and asked her if there was any reason for a judicial sale, and she said that there were debts to be paid, and they had to sell something to pay them; and I explained, and we agreed, that it would have to go through a judicial sale and be sold, the estate to pay all the costs, and that I would bid $400 for the land at that sale. This agreement was carried out, and the land was purchased by me for $400." It appears from the evidence that Mrs. Johnston, after her talk with Frank, proceeded to have the estate of her deceased husband pro-

bated.   She employed L. L. Raymond of Scottsbluff, Nebraska, to act as her attorney.   Mr. Raymond was neither the attorney for the Tri-State Land Company nor for Mr. Frank.   There was no attorney at Bayard, and Mr. Frank asked Mrs. Johnston who she desired to act for her, and suggested that she might employ Mr. Raymond.   She thereupon employed him.   It appears that proper probate proceedings were had, and claims were filed against the estate, among others was one for Mrs. Johnston for the bills which she had paid that the estate owed.   It is suggested in appellants' brief that if she paid any bills it must have been with money belonging to the estate.   There is no evidence to support this statement, and Mrs. Johnston herself testified that the bills were paid with money she earned in the hotel.   The amount of the claims which were allowed against the estate were something like $700.   License to sell the land was granted.   The sale was duly advertised, and at the sale the land was purchased by William Frank for $400.   The testimony of both William Frank and the witness Raymond was that Mr. Raymond, at the request of the administratrix, cried the sale in her presence.   It is contended, however, that fraud was shown because the widow did not understand the proceedings, and that there was a fraudulent conspiracy between Frank and Raymond to secure title to the land.   These claims are conclusively rebutted, not only by the testimony of Mr. Raymond that she understood the proceedings, but also by letters which she wrote him showing clearly that she understood all the proceedings and cheerfully signed such papers as were presented to her, and understood the whole transaction. It appears that she went alone to Sidney, the county seat, and transacted a large part of the business herself.   The testimony shows beyond question that she desired to have the land sold for the purpose of paying the debts of her deceased husband.   It also appears that the land, at the time it was sold, brought its full value, to wit, $400.   The plaintiffs introduced no evidence to contradict this testimony, but assert in their brief that the value must be too

97 Neb. 13

low, because in that vicinity lands later sold for $35 an acre. It is also stated in appellants' brief that the $400' was paid to Mrs. Johnston at the time she gave a quitclaim deed, and that nothing was paid at the administratrix's sale. The record is void of any evidence that would justify this assertion. The testimony shows that Mr. Frank was engaged in purchasing thousands of acres of land in the vicinity of Bayard, and it is unreasonable to suppose that he would pay his money for the land without investigating the title. Mrs. Johnston testified that the money was left in the bank at Bayard, Nebraska, and it is reasonable to suppose that it was left there to be paid over if Frank bid the $400, as was expected.

It is further contended by appellants that fraud was established, because Frank agreed to bid $400 at the administratrix's sale. If this was a fact many of the judicial sales in the state of Nebraska are fraudulent. It is often the practice of parties interested to get some person to agree to bid a certain amount before they offer lands at a public sale. In the case of *Norman v. Olney,* 64 Mich. 553, the validity of an administrator's sale was in question. It was urged that, because the purchaser agreed to bid $40 an acre, and the land was sold to him, the sale was fraudulent. The court disposed of this contention as follows: "There was absolutely no evidence tending to show that Born and the defendant were not purchasers in good faith. On the contrary, they paid for the land all that it was considered to be worth, and the only thing urged against the *bona fides* of the transaction on their part is the fact that they agreed to bid $40 an acre if the executor would obtain license from the court to sell it. The sale, however, was properly noticed according to law, and such agreements to bid are often secured before sale by executors and others at judicial sales. Such an agreement could not and did not interfere with others bidding higher if they so desired."

As we view the evidence, plaintiffs failed to establish any of the allegations of fraud.

It is further contended that the land was the homestead of William Johnston, deceased, and therefore could not be sold for the payment of his debts. The testimony shows beyond question that Johnston and his family had removed from the land, and had been living in the hotel at Bayard some five years prior to his death; at that time he was running the hotel, and had never decided to change his occupation. His family lived in the hotel with him. The part of the land occupied by Johnston and his family when they lived on it was not the west half sold by the administratrix to the defendant William Frank. After Johnston left the land and moved to the hotel he sold the part of the land on which was situated the house and improvements to a third party, and it was owned by such third party at the time of his death. It is true that Mrs. Johnston afterwards repurchased it. The testimony clearly shows that the land in question herein was not the family homestead of William Johnston at the time of his death.

The appellants also challenge the validity of the appointment of Mrs. Johnston as administratrix of the estate of her deceased husband, for the alleged reason that her appointment was not made at the time fixed by the published notice. It appears, and the plaintiffs alleged in their petition, that letters of administration were issued to Mrs. Johnston by the probate court of Cheyenne county, and that fact was admitted by the defendants. It further appears that her petition was filed in the county court on the 20th day of May, 1904; that a hearing on the petition was ordered by the county judge, the date of the hearing being fixed on the 16th day of June; that notice thereof was published in the Bayard Transcript, a weekly newspaper published in the county, for four successive weeks prior to the day of the hearing. It is evident that the hearing was continued; that service was had upon the minor heirs; and that Mrs. Johnston was appointed administratrix of the estate of her deceased husband. The testimony shows that the proceedings were recorded in Book No. 2 of the records of the county court, on pages 247-254, and pages 604-605. Of these records plaintiffs produced in evidence

only the order to show cause, service thereof, and the affidavit of the publisher of the Bayard Transcript that the order was duly published for four consecutive weeks prior to the hearing. It must be observed that the county court is a court of record; that all presumptions will be indulged as to the regularity of its proceedings, and, in the absence of proof to the contrary, such presumptions are conclusive. It follows that the plaintiffs failed to show that Mrs. Johnston's appointment was void.

The bill of exceptions shows that all of the proceedings in the district court for a license to sell the land in question at administratrix's sale were regular. But it is contended that the sale was void because the license was not recorded in the journal of that court prior to the day on which the land was sold. This fact, however, does not clearly appear from the evidence.

Section 1451, Rev. St. 1913, provides: "In all cases where the judge shall order a sale of any real estate, while sitting at chambers, he shall make out in writing a copy of such order, and cause the same to be filed in the office of the clerk, who shall thereupon record such order, before any sale shall be made as aforesaid."

It appears from the evidence that the judge of the district court made out the order, which was filed by the clerk long before the sale was made, and the complete record, which the defendants introduced in evidence, shows that the order was recorded, but it was not shown when it was recorded in such record. In the absence of any evidence to the contrary, it may be presumed, however, to have been recorded before the sale.

In *Stack v. Royce,* 34 Neb. 833, the question here presented was discussed, and, while the language of the court as contained in the opinion indicates that the filing and recording of the order was jurisdictional, still the syllabus of the case, which is supposed to cover all of the points decided, reads as follows: "Such petition and the license must be filed in the office of the clerk of the district court of the county in which administration was granted."

The question was again considered in *Veeder v. McKinley-Lanning Loan & Trust Co.*, 61 Neb. 892, where, after a lengthy discussion, it was held: "An order or license, to an administrator to sell real estate of an intestate, granted by a judge sitting at chambers, must be filed in the office of the clerk of the district court of the county in which letters of administration are issued, before the administrator is empowered and authorized to sell such real estate."

The exact question here presented was not involved in either of these cases, and it must be observed that the provision in the statute, "who shall thereupon record such order," seems to relate alone to a duty imposed upon the clerk of the court, and not to what the administrator is required to do. It must be further observed, however, that the administratrix in this case filed the order with the clerk of the district court in ample time, and we are not willing to hold, where the evidence is uncertain as to whether the order was in fact entered on the record by the clerk before sale, it is sufficient to render the sale void. It may be conceded that the clerk ought to have recorded the order, but it is equally true that the administratrix complied with all of the requirements of the law, so far as she was concerned, and it is not believed that the failure of the clerk to perform his duty in the premises will require the court to set aside an administrator's deed, and we hereby disapprove of the dicta found in the opinions in the cases above mentioned, which would seem to establish a different rule.

It clearly appears from the evidence that the license was issued to the administratrix; that due notice of the sale was published in the Bayard Transcript a sufficient length of time; that all of the heirs of the decedent acknowledged service of the notice by personally signing their names thereto; that the administratrix gave the bond required by law, which was duly approved by the court; that she took the oath which she was required to take in such cases; that the sale was properly conducted, and the land was sold to the purchaser, who paid the administratrix therefor the

sum of $400, which was the full value of the land at that time.

It further appears that the court examined all of the proceedings; that the sale was confirmed, and a deed was made by the administratrix to the purchaser under the order of the court. The complete record contains all of the proceedings, including the license granted the administratrix to sell the land for the payment of the debts of the deceased, and it may be presumed, in the absence of positive evidence to the contrary, that it was recorded in proper time.

As we view the record, the plaintiff failed to establish such a state of facts as would require us to set aside the deed made by the administratrix to the purchaser. The judgment of the district court is therefore

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.