# HOUSER v. HAVEN.—225 S. W. (2d) 559.

Eastern Section. April 26, 1949.

Petition for Certiorari denied by Supreme Court, October 7, 1949.

See also 187 Tenn. 583, 216 S. W. (2d) 320.

Drinnen & Drinnen, of Maryville, for appellant.

Dunn, Meares & Bird, of Maryville, for appellee.

McAMIS, J.   While holding an assignment of a policy of life insurance as security for indebtedness owing by the insured, the assignee, Mary Emma Houser, shot the insured three to five times otherwise than by accident or in self-defense causing his death on June 25, 1944. The insurer has paid the amount of the policy into court under its bill of interpleader and the contest is between the administrator of the insured, Graham Haven, and the assignee who appeals.

It is not seriously contended that the killing was accidental or done in necessary self-defense by the assignee, the Chancellor having found from the proof that it was felonious.   The insistence is that the assignment of the policy created a vested right which cannot be forfeited for crime without violating Article 1, Section 12, of the Constitution of Tennessee and that the Chancellor erred in holding applicable Code Section 8395 depriving any person causing the death of another, otherwise than by accident or in necessary self defense, of the right to inherit or claim property ''by deed, will or otherwise'' from the victim of the homicide.

We think learned counsel misapply the constitutional inhibitions against corruption of blood, deodands and

forfeiture of estates. It is a matter of history that these constitutional provisions came into being against a background of royal oppression in the perversion of estates under the guise of punishment for crime, on the theory that the blood of the person convicted had become so corrupted that no one could inherit through him. Under the system of deodands, the theory was that an instrumentality, animate or inanimate, causing the death of a human being should be surrendered to the sovereign for sale and distribution among the poor in atonement for the wrong. Viewed in that perspective, we think the intent was to guard against the repetition of these wrongs by the new sovereign, the state.

If we are correct in this view, similarity between the evils envisaged by the framers of the constitution and the case here presented is lacking. The state is making no effort to confiscate the proceeds of the policy. It is untouched and unaffected by the present contest except in the negative sense that through the judicial branch it has denied, so far, the use of its judicial processes to enable the assignee to take advantage of her own wrong and thus to violate its sound public policy of protecting human life by removing the temptation to kill for financial advantage.

The constitutional provisions here invoked were not meant to shield the illgotten gains of a citizen but to protect the citizen against oppressions of the sovereign.

The policy of Tennessee is declared in positive terms by statute, Code Section 8395, as to the right of inheritance and we think it also applies to deny appellant the right to claim the benefits of the assignment. The language is that any person who would take property by inheritance, deed "or otherwise" from the person whose

death he has caused otherwise than by accident or in necessary self-defense "shall forfeit all right therein, and the same shall go as it would have gone by the law of distribution . . ." etc.

In Jamison v. Metropolitan Life Ins. Co., 24 Tenn. App. 398, 404, 145 S. W. (2d) 553, this statute was held to deprive a beneficiary of the right to recover under a policy of insurance. We see no difference between the rights of a beneficiary under the policy and the right of an assignee except that a beneficiary may have no vested right while an assignee's rights, we may assume, are vested.

But, by the act of killing the insured, the assignee accelerates and makes certain the maturity of the policy while it is still in force. By the act of feloniously killing the insured, the assignee, except for the statute or the common law duty of the courts to refuse recognition to rights growing out of the assignee's own wrong, thus gains the right, which he did not have before, to claim immediately the benefits of the assignment and the policy without risking a lapse of the policy for non-payment of premiums and without waiting until it matures upon the death of the insured from other causes. It is here that the statute comes into play to prevent the vesting of any new rights. No right which had vested before the killing is disturbed. By killing the insured the assignee makes impossible the realization of such rights since it can never be determined whether the policy while in force and effect would have become payable to the assignee as a result of the death of the insured from causes other than the felonious act of the assignee.

■ We are further of opinion the Chancellor was correct irrespective of the statute. A number of cases

might be cited, including Jamison v. Metropolitan Life Ins. Co., supra, 24 Tenn. App. 404, 145 S. W. (2d) 553, and see Columbian Mutual Life Ins. Co. v. Martin, 175 Tenn. 517, 136 S. W. (2d) 52, holding that it is contrary to public policy to permit a beneficiary who has feloniously killed the insured to recover. No less an authority than the Supreme Court of the United States has applied the same rule to an assignee in Mutual Life Ins. Co. v. Armstrong, 117 U. S. 591, 6 S. Ct. 877, 881, 29 L. Ed. 997, where it was aptly said in the concluding portion of the opinion: "But, independently of any proof of the motives of Hunter in obtaining the policy, and even assuming that they were just and proper, he forfeited all rights under it when, to secure its immediate payment, he murdered the assured. It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of the party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had willfully fired."

We have found no cases holding to the contrary and we believe every consideration of logic, natural justice and public policy sustains the view indicated. See Couch, Cyclopedia of Insurance Law, Vol. 2, p. 1023, citing Mutual Life Ins. Co. v. Armstrong, supra, and the English case of Prince of Wales Asso. Co. v. Palmer, 25 Beav. 605, 53 Eng. Reprint 768.

We find no error in the decree and all assignments are overruled and the cause remanded for distribution of the fund in court. Costs will be taxed to appellant.

Hale and Howard, JJ., concur.