LARRY LOFTON, ADMINISTRATOR OF THE ESTATE OF DOUG LOFTON;
    LARRY LOFTON, INDIVIDUALLY, AND WIFE, JOY LOFTON; AND
    SANDRA LOFTON SMITH, ADMINISTRATRIX OF THE ESTATE OF BET-
    TIE LOFTON; AND SANDRA LOFTON SMITH, INDIVIDUALLY AND
    HUSBAND, SHERRILL SMITH v. ROBERT LOFTON, A MINOR

LARRY LOFTON, ADMINISTRATOR OF THE ESTATE OF DOUGLAS
    LOFTON; LARRY LOFTON, INDIVIDUALLY, SANDRA LOFTON
    SMITH, ADMINISTRATRIX OF THE ESTATE OF BETTIE LOFTON AND
    SANDRA LOFTON SMITH, INDIVIDUALLY v. ROBERT LOFTON,
    A MINOR, SANDRA LOFTON SMITH, GUARDIAN FOR ROBERT
    LOFTON; AND TRUSTEES OF OHIO HIGHWAY DRIVERS' WEL-
    FARE FUND

LARRY LOFTON, ADMINISTRATOR OF THE ESTATE OF DOUGLAS
    LOFTON; LARRY LOFTON, INDIVIDUALLY; SANDRA LOFTON
    SMITH, ADMINISTRATRIX OF THE ESTATE OF BETTIE LOFTON; AND
    SANDRA LOFTON SMITH, INDIVIDUALLY v. ROBERT LOFTON,
    A MINOR, SANDRA LOFTON SMITH, GUARDIAN FOR ROBERT
    LOFTON; AND UNIVERSITY LIFE INSURANCE COMPANY OF
    AMERICA

No. 7519DC234

(Filed 18 June 1975)

1. Insurance § 35— involuntary manslaughter — right to life insurance
   proceeds
       A person who has been convicted of involuntary manslaughter of
   another has not been convicted of a "wilful" killing within the meaning
   of G.S. 31A-3(3)a and thus is not a "slayer" who is barred by G.S.
   Ch. 31A from receiving the proceeds of a life insurance policy on the
   life of deceased.

2. Descent and Distribution § 6; Insurance § 35— acts barring property
   rights — G.S. Chapter 31A
       The provisions of G.S. Ch. 31A do not completely supplant the
   common law principle prevailing in N. C. that a person should not be
   allowed to profit by his own wrong; G.S. 31A-15 preserves the com-
   mon law, both substantively and procedurally, as to all acts not specifi-
   cally provided for in Ch. 31A.

3. Insurance § 35— killing of insured — right to life insurance proceeds —
   admissibility of criminal conviction
       In a civil action to determine the right of a beneficiary who has
   caused the death of an insured to receive the proceeds of a policy of
   insurance on his life, the record of the beneficiary's conviction of a
   "wilful and unlawful killing" is admissible to establish the disqualifi-
   cation of the beneficiary to receive the proceeds under Ch. 31A; how-
   ever, when the wrongdoer is not disqualified by Ch. 31A from receiving

Lofton v. Lofton

the insurance proceeds, and the common law must be relied on for such disqualification, the record of a criminal conviction of the wrongdoer for a crime not amounting to a "wilful and .unlawful killing," such as a conviction for involuntary manslaughter, is not admissible, and it is necessary to prove at the trial the factual circumstances relating to the killing from which the court can determine the issue.

4. **Insurance § 35— killing of insured — right to insurance proceeds — disqualification under common law**

Evidence not objected to that a defendant beneficiary had been convicted of the involuntary manslaughter of the insured is sufficient to support the court's conclusion that defendant is disqualified under the common law from receiving the proceeds of the insurance policy.

5. **Descent and Distribution § 6— murder of parents by child — child not convicted and hence not a "slayer"**

A minor child was not convicted by a court of competent jurisdiction of killing his parents and was not a slayer as defined by G.S. 31A-3(3)a and therefore barred from sharing in any of the property or benefits resulting from the death of his parents where the minor was adjudged a delinquent child in a juvenile proceeding upon the finding of the district court that the "child did wilfully and with malice aforethought murder his mother and father."

6. **Descent and Distribution § 6— murder of parents by child — disqualification under common law from inheriting**

In an action to have minor defendant barred from inheriting or receiving any property or benefits on account of the death of his parents, the trial court had before it sufficient established facts to support its conclusion that defendant was disqualified under common law from inheriting where the court had before it a judicial admission that defendant had wilfully shot and killed his parents, and also had before it, by stipulation, the order of a district court judge in a juvenile proceeding in which the judge made a determination that defendant did wilfully and with malice aforethought murder his parents.

APPEAL by defendant Robert Lofton from *Montgomery, Judge.* Judgment entered 20 December 1974 in District Court, ROWAN County. Heard in the Court of Appeals 27 May 1975.

These are three civil actions seeking to have defendant Robert Lofton (Robert), a minor, barred from inheriting or receiving any property or benefits on account of the death of his parents. The actions were instituted by the personal representatives and certain other children of the deceased parents who allege that Robert, who was not quite 14 years of age at the time, unlawfully shot and killed his parents.

All surviving children of the decedents are parties to the actions. The actions involve title to real estate which was held by decedents as tenants by the entirety, title to a mobile home

Lofton v. Lofton

and other personalty, and certain insurance and other benefits payable by reason of the death of decedents.

On motion of Robert's guardian ad litem and attorney, the three actions were consolidated for trial and heard without a jury. The court made extensive findings of fact including the following (summarized) which are pertinent to the questions presented by this appeal:

(1) Prior to and up until 23 December 1973 Robert lived with his father and mother in a mobile home which was situated near Rockwell in Rowan County.

(2) On 23 December 1973, Robert, then 13 years and 9 months of age, willfully, unlawfully and wrongfully shot and killed his father and his mother. (Exception noted to this finding.)

(3) In a juvenile proceeding held in district court on 11 February 1974 Robert was adjudged a "delinquent child," as a result of allegations and proof offered to the court to establish the aforesaid wrongful acts with regard to the death of Robert's parents; that Robert was committed to a Youthful Offender Facility, as provided by law, at Swannanoa, N. C., and he is still in the custody of the State of North Carolina as a "delinquent child."

(4) In said juvenile proceeding, Judge Hammond made the following entry:

Upon hearing oral evidence the Court finds the following facts beyond a reasonable doubt: That on or about the 23rd day of December, 1973, this child did willfully [sic] and with malice aforethought murder his mother and father. That he is a delinquent child as alleged in the petition.

It is now therefore ordered that he be committed to the custody of the North Carolina Board of Youth Development for an indeterminate period in accordance with the statutes. It is recommended to the Department that it take a close look at the facts of the case and the reports which are contained in the file and that it retain him at Swannanoa Center for extensive evaluation before making any other placement. . . .

(5) Robert's parents died simultaneously.

The court made numerous conclusions of law which include the following:

1. That in each of the three civil actions the defendant Robert Lofton is a "slayer" as defined in G.S. 31A-3, having admitted in open Court that he did on or about the 23rd day of December, 1973,

EXCEPTION No. 9.

willfully and with malice and aforethought, murder his father and mother, Douglas Lofton and Bettie Lofton; that as a "slayer" under the provisions of G.S. 31A-3 the said Robert Lofton is subject to the forfeiture provisions of Chapter 31A-11 of the General Statutes relative to insurance benefits and is subject to the forfeiture provisions of Chapter 31A-4 of the General Statutes relative to the forfeiture of real and personal property; that G.S. 31A-15 sets forth the intention and purpose of the North Carolina General Assembly in adopting this statute entitled "Acts Barring Property Rights," and the General Assembly directed that the chapter should be construed broadly in order to effect the policy of this state that no person shall be allowed to profit by his own wrongdoing.

2. That it is a long standing position of the State of North Carolina, regardless of statute, that no person should be entitled to profit from his own wrongdoing, and where by virtue of rules of law property, either real or personal, would come to one who has been guilty of killing his predecessor in title, it is held by the North Carolina Courts that the wrongdoer would only hold bare legal title to the share of property, real or personal, that would come from the wrongdoer's victims to him and so under the common law of this state, if it were determined that G.S. 31A would not apply, still Robert Lofton would be only the constructive trustee of any title to property which he received from his mother or his father

EXCEPTION No. 10

and as the constructive trustee he would hold title to the property for the benefit of Larry Lofton and Sandra Lofton Smith in the manner and form as hereinafter set forth.

The court further concluded as a matter of law that Robert was barred from receiving any property left by, or benefits pay-

able by reason of the death of, his parents and adjudged that the property and benefits accrue to the other heirs of law of the decedents.

Robert appealed.

*Carlton, Rhodes and Thurston, by Richard F. Thurston, for plaintiff appellees.*

*Kluttz and Hamlin, by Richard R. Reamer, for defendant appellant.*

BRITT, Judge.

The trial court held that Robert was barred from inheriting any property from, or receiving any benefits accruing because of the death of, his parents, by reason of (1) the provisions of G.S. Ch. 31A and (2) the common law of our State. Plaintiffs contend that they are entitled to an affirmance of the judgment if either (1) or (2) applies.

The recent case of *Quick v. Ins. Co.*, 287 N.C. 47, 213 S.E. 2d 563 (1975), provides considerable guidance for us in the disposition of this appeal. In that case the court either established or reiterated the following principles of law:

[1]  1. A person who has been convicted of involuntary manslaughter of another has not been convicted of a "willful" killing within the meaning of G.S. 31A-3(3)a and thus is not a "slayer" who is barred by G.S. Ch. 31A from receiving the proceeds of a life insurance policy on the life of the deceased.

[2]  2. The provisions of G.S. Ch. 31A do not completely supplant the common law principle prevailing in North Carolina that a person should not be allowed to profit by his own wrong. G.S. 31A-15 preserves the common law, both substantively and procedurally, as to all acts not specifically provided for in Ch. 31A.

[3]  3. In a civil action to determine the right of a beneficiary who has caused the death of an insured to receive the proceeds of a policy of insurance on his life, the record of the beneficiary's conviction of a "wilful and unlawful killing" is admissible to establish the disqualification of the beneficiary to receive the proceeds under Ch. 31A; however, when the wrongdoer is not disqualified by Ch. 31A from receiving the insurance proceeds, and the common law must be relied on for such disqualification,

the record of a criminal conviction of the wrongdoer for a crime not amounting to a "wilful and unlawful killing," such as a conviction for involuntary manslaughter, is not admissible, and it is necessary to prove at the trial the factual circumstances relating to the killing from which the court can determine the issue.

**[4]**   4. Evidence not objected to that a defendant beneficiary had been convicted of the involuntary manslaughter of the insured is sufficient to support the court's conclusion that defendant is disqualified under the common law from receiving the proceeds of the insurance policy.

**[5]**   First, we consider whether Robert is barred by G.S. Ch. 31A from sharing in any of the property or benefits involved in these actions. To be barred by the statutes, he must be a "slayer" as defined by G.S. 31A-3(3). Under this section there are four subsections and subsections b, c and d clearly are inapplicable. G.S. 31A-3(3)a defines a slayer as "Any person who by a court of competent jurisdiction shall have been convicted as a principal or accessory before the fact of the wilful and unlawful killing of another person; . . . . " The question then arises as to whether Robert has ever been *convicted* by a court of competent jurisdiction as a principal or accessory before the fact of the willful and unlawful killing of his parents? Our research impels a negative answer.

G.S. 31A-3(3)a envisions a conviction of unlawful homicide. In this State, any unlawful homicide is or may be punishable by imprisonment in the State's prison, hence, it is a felony. G.S. 14-1, 14-17, 14-18. Article I, § 24, of our State Constitution provides: "No person shall be convicted of any crime but by the unanimous verdict of a jury in open court. The General Assembly may, however, provide for other means of trial for misdemeanors, with the right of appeal for trial de novo."

In *Smith v. Thomas,* 149 N.C. 100, 101, 62 S.E. 772 (1908), Justice Walker, writing for the court, declared that the word *convicted* means, in law, " . . . [T]he ascertainment of the defendant's guilt by some known legal mode, whether by confession in open court or by the verdict of a jury or, under our Constitution and statute, by the judgment of a justice of the peace, where a jury trial is waived, provided the justice has final jurisdiction of the offense. . . . "

We hold that the finding made by District Court Judge Hammond that "this child (Robert) did wilfully and with malice aforethought murder his mother and father" did not constitute a conviction as envisioned by G.S. 31A-3(3)a, therefore, the "barring" provisions of Ch. 31A do not apply.

[6]  We now consider whether Robert is barred by the common law from sharing in any of the property or benefits involved in these actions.

In *Garner v. Phillips,* 229 N.C. 160, 47 S.E. 2d 845 (1948), decided prior to the enactment of G.S. Ch. 31A in 1961, the question was presented as to whether a 16-year-old boy who allegedly murdered his parents was barred from inheriting a share of their property. The court, in an opinion by Justice (later Chief Justice) Devin, said (pp. 161-2) :

> It is a basic principle of law and equity that no man shall be permitted to take advantage of his own wrong, or acquire property as the result of his own crime. (Citations.)

> True, we have no statute in North Carolina which in express terms destroys the right of inheritance under the canons of descent, or bars the devolution of title as heir to one who has murdered the ancestor from whom derived, but the rule seems to have been established in this jurisdiction that in such case equity will impress upon the legal title so acquired a constructive trust in favor of those next entitled and will exclude the murderer from all beneficial interest in the lands descending to him from his victim. . . .

We hold that the principle stated in *Garner,* upon a proper establishment of facts, would apply to the case at hand. That brings us to the final question of whether the court, as was true in *Quick,* had before it sufficient established facts to support its conclusion that Robert was disqualified under common law from sharing in the property and benefits involved in these actions.

In the original answers filed, Robert's guardian ad litem admitted that Robert had unlawfully and willfully shot and killed his parents. However, prior to trial the guardian ad litem was permitted to delete those admissions and plead instead allegations to the effect " . . . that the defendant Robert Lofton admits that he willfully shot and killed his father and mother but he denies that his acts in so doing were unlawful for the

City of Durham v. Development Corp.

purposes of determining the outcome of these three actions. . . . " The record contains a stipulation that at trial the evidence included a review by the court of the juvenile proceeding conducted by Judge Hammond but due to the confidential nature of the material contained in the record of the proceeding, counsel for plaintiffs and defendants consider it necessary to stipulate in this record only the juvenile order. The order entered by Judge Hammond contained a finding, as fully set forth above, that Robert "did wilfully and with malice aforethought murder his mother and father."

No case from this jurisdiction has been cited, and our research fails to disclose one, that provides an explicit answer to the question with which we now labor. Plaintiffs do cite the New York case of *In re Sengillo's Estate,* 206 Misc. 751, 134 N.Y. S. 2d 800 (1954).

Considering the fact that the trial court had before it a judicial admission that Robert had willfully shot and killed his parents, and also had before it, by stipulation, the order of Judge Hammond in which he made a determination that Robert "did wilfully and with malice aforethought murder" his parents, we hold that the trial court's conclusion that Robert was disqualified to share in the property and benefits involved in these actions was sufficiently supported. *Quick v. Ins. Co., supra.*

For the reasons stated, the judgment appealed from is

Affirmed.

Judges PARKER and VAUGHN concur.