Minerva MENDEZ–BELLIDO, as mother and natural guardian of Cynthia Mendez, an infant over the age of fourteen years, to wit: seventeen years of age, Janie Mendez, an infant under the age of fourteen years, to wit: eleven years of age and Jessica Mendez, an infant under the age of fourteen years, to wit: seven years of age, Plaintiffs,

v.

BOARD OF TRUSTEES OF DIVISION 1181, A.T.U. NEW YORK EMPLOYEES PENSION FUND AND PLAN and Edith Abreu Mendez, Defendants.

No. 87 CV 3000.

United States District Court, E.D. New York.

March 30, 1989.

Martin S. Friedman, Charles Berkman, Brooklyn, N.Y., for plaintiffs.

Joy M. Holtz, Wilfred L. Davis & Stephen Davis, P.C., New York City, for defendants.

MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendant, Board of Trustees of Division 1181, A.T.U. New York Employees Pension Fund and Plan ("the Pension Fund"), moves pursuant to Fed.R.Civ.P. 56 for summary judgment. Plaintiff, Minerva Mendez–Bellido, on behalf of her children ("the infant plaintiffs"), also moves for summary judgment against defendant Edith Abreu Mendez ("Abreu"). For the reason set forth below, the Pension Fund's motion is denied and plaintiff's motion is

granted.[1]

## FACTS

On September 17, 1985 Carlos Mendez was murdered. On December 15, 1986, defendant Abreu pleaded guilty to an indictment charging her with first degree manslaughter and was subsequently sentenced to a two-to-six-year term of imprisonment. Abreu was the second wife of the decedent.

At the time of his death, Carlos Mendez was vested in his rights to a pension administered by the Pension Fund with payments to commence on December 1, 1999, the first month following his 55th birthday. The Pension Fund is established pursuant to the Labor Management Relations Act of 1947, 29 U.S.C. § 186(c)(5), and is an employee benefit fund within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

On December 22, 1986, plaintiff, Carlos Mendez's first wife, made a claim on behalf of her children for the death benefits provided for in the pension plan.[2] Plaintiff's claim was rejected on the ground that the Trust Agreement, which was established pursuant to collective bargaining agreements, required that a qualified preretirement joint and survivor's annuity be paid to the decedent's surviving spouse. The Appeal Board of the Pension Fund subsequently affirmed that determination.

Plaintiff commenced this action in Supreme Court, Kings County, seeking to declare defendant Abreu disqualified from receiving benefits from the pension plan and an adjudication that plaintiffs share equally the plan benefits. The Pension Fund removed the action to this Court, and now moves for summary judgment on the ground that ERISA preempts any state law that would operate to divest defendant Abreu's right to the pension plan benefits. Plaintiff moves for summary judgment against defendant Abreu alleging that as a matter of New York law and public policy,

Abreu cannot enjoy the benefits derived from the pension.

## DISCUSSION

There is no dispute that New York law forbids one who kills another to take through intestacy or under the victim's will. *See Riggs v. Palmer*, 115 N.Y. 506, 22 N.E. 188 (1889). The prohibition holds true even when the would-be beneficiary is convicted of second degree manslaughter—a reckless but non-intentional killing. *See Matter of Wells*, 76 Misc.2d 458, 350 N.Y.S.2d 114, 119 (Surr.Ct.Nassau Co. 1973), *aff'd without opinion*, 45 A.D.2d 993, 359 N.Y.S.2d 872 (2d Dep't 1974).

The pension plan at issue is subject to ERISA's requirement for joint and survivor annuity and preretirement survivor annuity. *See* 29 U.S.C. § 1055. Section 205(a)(2) of ERISA provides that "[e]ach pension plan ... shall provide that ... in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a qualified preretirement survivor annuity shall be provided to the surviving spouse of such participant." *Id.* § 1055(a)(2). In furtherance of this requirement, the plan provides:

Effective August 23, 1984, if a married participant who has been married to his spouse for at least one year dies and has at least one (1) hour of employment or paid service on or after August 23, 1984 with sufficient years of credited service for a pension:

(1) who has not attained age 55 then, at such time as he should have met the age requirement, his surviving spouse shall be entitled to receive a joint and survivor benefit payable as of the first of the month following the month in which the participant would have attained age 55, based upon the benefit rate in effect at the time of participant's demise. The benefit amount the spouse will receive shall be 50% of the pension the partici-

---

**1.** Defendant Abreu has not appeared in this action and has not submitted papers in opposition to this motion.

**2.** Carlos Mendez and plaintiff were divorced in November 1983. The infant plaintiffs are the issue of that marriage. In July 1984, defendant Abreu and Carlos Mendez were married.

pant would have been entitled to receive upon attainment of age 55 based upon the benefit rate in effect at the time of participant's demise.

Article V, § 5(b)(1).

In order to determine whether defendant Abreu can benefit from the pension plan, the Court must determine whether ERISA preempts New York law prohibiting a killer from profiting from her crime.

Section 514(a) provides that ERISA "shall supersede any and all state laws insofar as they may now or hereinafter relate to any employee benefit plan" covered by the Act. 29 U.S.C. § 1144(a). Although § 514(b)(2), which contains the "saving clause" and the "deemer clause", creates exceptions to the preemption rule, the exceptions are inapplicable to this case. The Court thus focuses on whether the state law "relates to" an employee benefit plan.

The words "relate to" must be interpreted broadly, *Shaw v. Delta Airlines Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983), to effectuate Congress' purpose of "establish[ing] pension plan regulation as exclusively a federal concern." *Id.* at 98, 103 S.Ct. at 2900. This congressional mandate, however, does not reach all state laws. Indeed, as the *Shaw* Court points out, "[s]ome states actions may affect employee benefit plans in too tenuous, remote, or peripheral manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n. 21, 103 S.Ct. at 2901 n. 21.

There is no hard and fast rule for determining whether a state law "relates to" and is therefore preempted by ERISA, or is "too remote" and can therefore coexist with the federal scheme. The Second Circuit in *Aetna Life Insurance Co. v. Borges*, 869 F.2d 142 (2d Cir.1989), however, has recently provided some guidance. After reviewing the relevant case law, the *Borges* Court made the following analysis:

> we find that laws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA is incidental.

*Id.* at 146.

Using this framework, the Court must conclude that a state law prohibiting a killer from profiting from her crime is not preempted by ERISA. This common law rule is rooted in public policy and has broad application to insurance policies, wills and intestacy. The application of this rule to pension plans governed by ERISA will not affect the determination of an employee's eligibility for benefits, *compare Gilbert v. Burlington Industries Inc.*, 765 F.2d 320, 327 (2d Cir.1985) (state severance law preempted where it would determine whether benefits were to be paid), *aff'd*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986), nor will it impact on the method of calculating the amount of benefits due. *See Mackey v. Lanier Collections Agency & Service, Inc.*, — U.S. —, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988) (state garnishment law that distinguishes between ERISA plans and non-ERISA plans preempted); *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 524, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981) (preempting state law because it eliminated a method of calculating benefits otherwise permitted by ERISA); *Rebaldo v. Cuomo*, 749 F.2d 133, 138–39 (2d Cir.1984) (state law upheld because it did not affect the structure, administration or type of benefits provided by ERISA), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985).

The Pension Fund nevertheless argues that *MacLean v. Ford Motor Co.*, 831 F.2d 723 (7th Cir.1987) mandates a contrary result. In *MacLean*, the executor of an employee's estate brought an action to collect the accumulated benefits from the employee's Savings and Stock Investment Plan ("SSIP"), an employee pension plan governed by ERISA. On a motion for summary judgment, the executor argued that the SSIP benefits should be distributed in accordance with the employee's will rather than to the SSIP designated beneficiary.

The Seventh Circuit held that ERISA preempted state testamentary law. In so concluding, the *MacLean* court found that state testamentary law "interfered with the administration of the [SSIP] and violated its terms" since the SSIP provided "a valid method for determining the beneficiary." *Id.* at 728. The court also discussed the havoc that would result if state testamentary law controlled since each state has different laws regarding testamentary transfers. *Id.* It is on the latter point that the Court finds *MacLean* distinguishable. Unlike state testamentary transfer laws, state laws prohibiting murderers from receiving death benefits are relatively uniform.[3] Thus, there is little threat of creating a "patchwork scheme of regulation." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987).

Moreover, it appears that *federal* law is in accord. In *Ridgway v. Ridgway*, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981), the Supreme Court considered the effect of a state constructive trust on the proceeds of an insurance policy issued pursuant to the Servicemen's Group Life Insurance Act, 38 U.S.C. §§ 765 *et seq.* ("SGLIA"). Although the Court concluded that the SGLIA and the beneficiary designated thereunder prevail over a state constructive trust for the benefit of another, the court expressly reserved the problem presented in "extreme fact situations ... where the beneficiary has obtained the proceeds through fraudulent or illegal means as, for example, where the named beneficiary murders the insured service member." *Id.* 454 U.S. at 60 n. 9, 102 S.Ct. at 57 n. 9. Lower courts construing the SGLIA and its predecessor statutes, however, have consistently held that, as a matter of federal law, a beneficiary convicted of murdering the insured is precluded from receiving the insurance proceeds. *See Pru-*

---

**3.** *See Glass v. Adkins*, 436 So.2d 844 (Ala.1983); *In re Griswold*, 13 Ariz.App. 218, 475 P.2d 508 (1970); *Clark Center, Inc. v. National Life & Accident Ins. Co.*, 245 Ark. 563, 433 S.W.2d 151 (1968); *N.Y. Life Ins. Co. v. Cawthorne*, 48 Cal. App.3d 651, 121 Cal.Rptr. 808 (1975); *Strickland v. Wysowatcky*, 128 Colo. 221, 250 P.2d 199 (1952) (rule does not apply to manslaughter); *Bird v. Plunkett*, 139 Conn. 491, 95 A.2d 71 (1953) (rule does not apply to manslaughter); *Maneval v. Lutheran Brotherhood*, 281 A.2d 502 (De.1971); *In re Estate of Fairweather*, 444 So. 2d 464 (Fla.1983), *appeal denied*, 451 So.2d 848 (1984); *Tippens v. Metropolitan Life Ins. Co.*, 99 F.2d 671 (5th Cir.1938) (applying Georgia law); *United States v. Foster*, 238 F.Supp. 867 (E.D. Mich.1965) (applying Hawaiian law); *In re Estate of Eliasen*, 105 Idaho 234, 668 P.2d 110 (1983); *In re Estate of Seipel*, 29 Ill.App.3d 71, 329 N.E.2d 419 (1975) (rule does not apply to manslaughter); *Stacker v. Mack*, 126 Ind.App. 95, 130 N.E.2d 484 (1955); *McDade v. Mystic Workers of the World*, 196 Iowa 857, 195 N.W. 603 (1923); *Harper v. Prudential Life Ins. Co.*, 233 Kan. 358, 662 P.2d 1264 (1983); *Bates v. Wilson*, 313 Ky. 572, 232 S.W.2d 837 (1950); *Smith v. Southern National Life Ins. Co.*, 134 So.2d 337 (La.1961); *Metropolital Life Ins. Co. v. Wenckus*, 244 A.2d 424 (Me.1968); *Ford v. Ford*, 307 Md. 105, 512 A.2d 389 (1986); *Slocum v. Metropolitan Life Ins. Co.*, 245 Mass. 565, 139 N.E. 816 (1923); *Budwit v. Herr*, 339 Mich. 265, 63 N.W.2d 841 (1954); *Sharpless v. Ground Lodge*, 135 Minn. 35, 159 N.W. 1086 (1916); *Genna v. Harrington*, 254 So.2d 525 (Miss.1971); *Wells v. Harris*, 414 S.W.2d 343 (Mo.1967); *In re Estate of Matye*, 198 Mont. 317, 645 P.2d 955 (1982); *Johnston v. Frank*, 97 Neb. 190, 149 N.W. 409 (1914); *Wilson v. Randolph*, 50 Nev. 371, 261 P. 654 (1927) (son permitted to inherit); *Kelley v. State*, 105 N.H. 240, 196 A.2d 68 (1963) (murderer held to be constructive trustee for estate); *Whitney v. Lott*, 134 N.J.Eq. 586, 36 A.2d 888 (1944) (murderer held to be constructive trustee of estate); *Reagan v. Brown*, 59 N.M. 423, 285 P.2d 789 (1955) (son permitted to inherit prior to statutory change); *Lofton v. Lofton*, 26 N.C.App. 203, 215 S.E.2d 861 (1975); *Matter of Estate of Josephson*, 297 N.W.2d 444 (N.D.1980); *In re Estate of Birt*, 18 Ohio Misc.2d 7, 481 N.E.2d 1387 (1983) (juvenile delinquent entitled to inherit though purposely causing father's death); *National Aid Assoc. v. May*, 201 Okla. 450, 207 P.2d 292 (1949); *Hargrove v. Taylor*, 236 Or. 451, 389 P.2d 36 (1964) (murder held to be constructive trustee of estate); *In re Kravitz*, 418 Pa. 319, 211 A.2d 443 (1965); *Smith v. Todd*, 155 S.C. 323, 152 S.E. 506 (1930); *DeZotell v. Mutual Life Ins. Co.*, 60 S.D. 532, 245 N.W. 58 (1932); *Houser v. Haven*, 32 Tenn.App. 670, 225 S.W.2d 559 (1949); *National Life & Accident Ins. Co. v. Thompson*, 153 S.W.2d 322 (Tex.Civ. App.1941); *Continental Bank & Trust Co. v. Maag*, 285 F.2d 558 (10th Cir.1960) (applying Utah law); *In re Estate of Mahoney*, 126 Vt. 31, 220 A.2d 475 (1966) (murderer held to be constructive trustee of estate); *Blanks v. Jiggets*, 192 Va. 337, 64 S.E.2d 809 (1951); *New York Life Ins. Co. v. Jones*, 86 Wash.2d 44, 541 P.2d 989 (1975); *Metropolitan Life Ins. Co. v. Hill*, 115 W.Va. 515, 177 S.E. 188 (1934); *In re Wilson's Estate*, 5 Wis.2d 178, 92 N.W.2d 282 (1958); *Metropolitan Life Ins. Co. v. Banion*, 86 F.2d 886 (10th Cir.1936) (applying Wyoming law).

*dential Insurance Co. v. Tull,* 690 F.2d 848, 849 (4th Cir.1982) ("Federal law recognizes that the beneficiary's claim is barred by the equitable defense: 'No person should be permitted to profit from his own wrong.'" (quoting *Shoemaker v. Shoemaker,* 263 F.2d 931, 932 (6th Cir.1959))), *aff'g,* 532 F.Supp. 341 (E.D.Va.1981); *Shoemaker, supra,* 263 F.2d at 932; *Burns v. United States,* 200 F.2d 106, 106–07 (4th Cir.1952), *aff'g,* 103 F.Supp. 690 (D.Md. 1952); *United States v. Leverett,* 197 F.2d 30, 31 (5th Cir.1952); *Austin v. United States,* 125 F.2d 816, 819 (7th Cir.1942); *United States v. Kwasniewski,* 91 F.Supp. 847, 852 (D.C.Mich.1950).

Indeed, over a century ago, in an action to recover the proceeds of a life insurance policy, the Supreme Court stated: "[i]t would be a reproach to the jurisprudence of the country, if one could recover insurance money payable on the death of a party whose life he had feloniously taken." *New York Mutual Life Insurance Co. v. Armstrong,* 117 U.S. 591, 600, 6 S.Ct. 877, 881, 29 L.Ed. 997 (1886).

Merely concluding that Abreu is precluded from receiving the pension plan benefits does not end the inquiry here. The Court must further determine who, if anyone, is entitled to receive the proceeds. Unfortunately, the Court is not adequately briefed on this point. Plaintiff argues that the benefits should be awarded to her children by operation of Article VII of the pension plan.[4] The Pension Fund, having failed to submit reply papers on its motion, has not addressed the applicability of Article VII or the mechanism for distribution under the pension plan in the event the designated spouse pre-deceases the employee. The Court is also is unaware whether Carlos Mendez had any other children, whether he has an estate and who the executor or administrator of that estate is. In sum, the Court is ill-prepared at this juncture to decide whether the pension plan benefits

**4.** Article VII provides as follows:

*Death benefits*

If a participant dies at any time before becoming eligible for a pension hereunder, his beneficiary shall be entitled to a refund equal to the amount of his contributions to the Fund plus 2½% interest compounded annually to December 31, 1972. Thereafter from January 1, 1973 through December 31, 1975, no interest shall be credited.

Commencing January 1, 1976, interest shall be compounded annually at the rate of 5%.

If a participant dies who is eligible to receive a pension, after he has begun to receive pension payments and has elected not to provide a Survivor's Annuity or if he is unmarried, his beneficiary shall receive the refund described above reduced by the amount of pension payments to the retired participant prior to his death.

In the event of the death of a participant's spouse who is receiving or would be entitled to receive a Survivor's Annuity, her beneficiary shall also receive the above described refund reduced by the amount of pension payments paid to the retired participant and/or the spouse prior to death.

Prior to making any payments under this Article, the Board shall require proof of death of the participant or retired participant.

Beneficiaries shall be designated on the form provided by the Trustees.

In the event no beneficiary has been designated, payment shall be made as follows:

(i) To the surviving spouse, if any;

(ii) If no surviving spouse, to the deceased's surviving children, if any, equally;

(iii) If no surviving spouse, and no surviving children, to the deceased's surviving parent or parents, if any, equally;

(iv) If no surviving spouse and no surviving children and no surviving parent, to the deceased's surviving brothers and sisters, if any, equally.

In the event there is no designated beneficiary, surviving spouse, surviving children, surviving parent, or surviving brother and/or sisters, then the payment shall be made to the Estate of the deceased. In the event there is no "Estate" and no claim is made by any of the persons specifically listed above within three years of date of death, then no death benefit need be paid. However restoration of the amount forfeited shall be made upon presentation of the valid claim of any person entitled thereto.

Anything to the contrary notwithstanding, the Trustees may, at their option, pay an amount, not to exceed the amount due on the death of the Participant determined as set forth above, to any person appearing to be equitably entitled to the payment of actual expenses incurred in connection with the burial of the participant where the named beneficiary or next of kin as set forth above, whichever is applicable, cannot be located within a reasonable time. The liability of the Trustees shall thereby be discharged to the extent of the amount so paid.

The identity of any person claiming to be a beneficiary or to be otherwise entitled to payment thereunder shall be substantiated to the satisfaction of the Trustees.

should be distributed to the infant plaintiffs pursuant to Article VII or whether alternate means of distribution exist. Upon an appropriate motion, with well-researched memoranda of law, the Court will reach this issue at a later date.

## CONCLUSION

Plaintiff's motion for summary judgment precluding Abreu from receiving the pension plan benefits is hereby granted. The Pension Fund's motion for summary judgment on the ground of ERISA preemption is hereby denied.

SO ORDERED.